1

2

3

4

5

6            UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
7                  AT SEATTLE

8   RADIO SYSTEMS CORP., *et al.*,

9              Plaintiffs,

10          v.                              Case No.  C10-0828RSL

11   TOM LALOR, *et al.*,                   ORDER CONSTRUING CLAIMS
                                            OF THE '014 AND '082 PATENTS
12             Defendants,

13

14

15       Defendant Tom Lalor is the owner of United States Patent Nos. 6,830,014 ("the

16   '014 Patent") and 7,267,082 ("the '082 Patent"), (collectively, the "patents"), both

17   entitled "Animal Collar."  The parties disagree regarding the interpretation of seven claim

18   terms contained in the patents.  The parties agree that when claim terms appear in

19   multiple claims, the terms should be interpreted the same way for each claim.

20       Defendants contend that plaintiffs have infringed the patents by making and selling

21   products that embody at least one claim of the patent.  After the parties' efforts to resolve

22   the matter failed, plaintiffs filed this declaratory judgment action.

23       Determining whether a particular product infringes an existing patent involves a

24   two-step analysis.  The Court must first identify the proper construction of the asserted

25

26   ORDER CONSTRUING CLAIMS
     OF THE '014 AND '082 PATENTS - 1

1  patent claim, an exercise which the Supreme Court has determined is a matter of law.

2  Markman v. Westview Instruments, Inc., 517 U.S. 370, 384-91 (1996).  After the claim

3  has been properly construed, the fact finder determines whether the accused device

4  infringes the claim.  The Federal Circuit recently reiterated that, although the claims of

5  the patent define the invention to which the patentee is entitled the right to exclude, the

6  claim construction analysis must focus on how a person of ordinary skill in the art would

7  understand the claim terms after reading the entire patent.  Phillips v. AWH Corp., 415

8  F.3d 1303, 1321, 1323 (Fed. Cir. 2005).

9       It is the person of ordinary skill in the field of the invention through whose
10      eyes the claims are construed.  Such person is deemed to read the words
     used in the patent documents with an understanding of their meaning in the
11      field, and to have knowledge of any special meaning and usage in the field.
     The inventor's words that are used to describe the invention – the inventor's
12      lexicography – must be understood and interpreted by the court as they
13      would be understood and interpreted by a person in that field of technology.
     Thus the court starts the decisionmaking process by reviewing the same
14      resources as would that person, *viz.*, the patent specification and the
15      prosecution history.

16 Phillips, 415 F.3d at 1313 (quoting Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d

17 1473, 1477 (Fed. Cir. 1998)).

18      The Phillips decision sets out a framework for claim construction that synthesizes

19 prior law while rejecting the earlier tendency to over-emphasize extrinsic evidence.  The

20 claims themselves, rather than dictionaries, encyclopedias, and treatises, provide a context

21 for the contested terms and comparisons against which to measure the scope of the

22 various claims.  Phillips, 415 F.3d at 1314-15.  Unless the meaning of the claim language

23 is "readily apparent even to lay judges" (Id. at 1314), the court should "rely heavily" on

24 the patentee's written description of the invention (Id. at 1317), giving the claims "their

25

26 ORDER CONSTRUING CLAIMS
OF THE '014 AND '082 PATENTS - 2

1  broadest reasonable construction 'in light of the specification as it would be interpreted

2  by one of ordinary skill in the art.'" Id. at 1316 (quoting In re Am. Acad. of Sci. Tech.

3  Ctr., 367 F.3d 1359, 1364 (Fed. Cir. 2004)).  Other evidence of how the patentee and the

4  PTO understood the claims contained in the prosecution history can also inform the

5  meaning of the claim language, although the Federal Circuit warns that this resource

6  sometimes lacks the clarity of the patent itself.  Id. at 1317.

7        When interpreting claim terms, district courts may also "rely on extrinsic evidence,

8  which 'consists of all evidence external to the patent and prosecution history, including

9  expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at

10  1317 (quoting Markman, 52 F.3d at 980).  Such evidence is especially useful for helping

11  the court understand the underlying technology, explaining how an invention works, and

12  establishing the way in which one skilled in the art would use the claim terms. Phillips,

13  415 F.3d at 1318.  Courts should not, however, put too much emphasis on extrinsic

14  evidence as the starting point for construing claim terms because such evidence "is

15  unlikely to result in a reliable interpretation of patent claim scope unless considered in the

16  context of the intrinsic evidence." Phillips, 415 F.3d at 1319.  The claim construction

17  methodology set forth in Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed.

18  Cir. 2002), which encouraged district courts to rely on dictionary definitions when

19  ascertaining the ordinary meaning of particular claim terms, with recourse to the

20  specification serving only as a check on the dictionary definition, was rejected:

21        The main problem with elevating the dictionary to such prominence is that
         it focuses the inquiry on the abstract meaning of words rather than on the
22        meaning of claim terms within the context of the patent.  Properly viewed,
         the "ordinary meaning" of a claim term is its meaning to the ordinary
23        artisan after reading the entire patent.  Yet heavy reliance on the dictionary
24        divorced from the intrinsic evidence risks transforming the meaning of the

25

26  ORDER CONSTRUING CLAIMS
     OF THE '014 AND '082 PATENTS - 3

1   claim term to the artisan into the meaning of the term in the abstract, out of

2   its particular context, which is the specification.

3   Phillips, 415 F.3d at 1321.

4       Even while rejecting the methodology of Texas Digital, the Federal Circuit

5   acknowledged that the purpose underlying that decision, namely to avoid "one of the

6   cardinal sins of patent law – reading a limitation from the written description into the

7   claims," was sound.  Phillips, 415 F.3d at 1319-20, 1323 (quoting SciMed Life Sys., Inc.

8   v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001)).  The court

9   also recognized:

10      [T]he distinction between using the specification to interpret the meaning of
        a claim and importing limitations from the specification into the claim can
11      be a difficult one to apply in practice.  However, the line between
12      construing terms and importing limitations can be discerned with reasonable
        certainty and predictability if the court's focus remains on understanding
13      how a person of ordinary skill in the art would understand the claim terms.
        For instance, although the specification often describes very specific
14      embodiments of the invention, we have repeatedly warned against confining
15      the claims to those embodiments.  In particular, we have expressly rejected
        the contention that if a patent describes only a single embodiment, the
16      claims of the patent must be construed as being limited to that embodiment.
17      That is not just because section 112 of the Patent Act requires that the
        claims themselves set forth the limits of the patent grant, but also because
18      persons of ordinary skill in the art rarely would confine their definitions of
19      terms to the exact representations depicted in the embodiments.

20  Phillips, 415 F.3d at 1323 (citations omitted).

21      In this litigation, the parties dispute the meaning of certain terms and phrases, most

22  of which are in Claim 1 of each patent.  Claim 1 of the '014 patent reads:

23      Claim 1.

24      An animal collar designed for attachment to an animal comprising:

25

26  ORDER CONSTRUING CLAIMS
    OF THE '014 AND '082 PATENTS - 4

a **collar housing** having an **inside surface** directed toward the animal during use; and

at least one **electrode intersecting** the inside surface at an **electrode base** and extending toward the animal during use;

said inside surface having at least one **high point surface extending above** said electrode base and toward the animal during use.

Claim 1 of the '082 patent reads:

Claim 1.

An animal collar designed for attachment to an animal, comprising:

a **collar housing** having an **inside surface** directed toward the animal during use;

a first **electrode** directed toward the animal during use, said first electrode **intersecting** said inside surface at a first **electrode base**; and

a second electrode directed toward the animal during use, said second electrode intersecting said inside surface at a second electrode base;

said inside surface having at least one **high point surface extending above** at least one of said first electrode base and said second electrode base and toward the animal during use;

said at least one high point surface located **outside of a central area of said housing, said central area located between said first electrode base and said second electrode base.**

In both claims, the Court has added bold demarcation for the disputed terms.

Having reviewed the memoranda and exhibits submitted by the parties and having heard the arguments of counsel at the hearing on May 19, 2011, the Court finds as follows:

As an initial matter, defendants contend that all of the disputed terms are not ambiguous and therefore should not be construed by the Court. Rather, the jury will be able to interpret the terms when asked to compare the claim with the allegedly infringing product. Interpretation of the patent is, however, a matter of law to be decided by the

ORDER CONSTRUING CLAIMS
OF THE '014 AND '082 PATENTS - 5

1  Court.  Markman, 517 U.S. at 384-91.  Moreover, the disputed terms are not common

2  terms that are generally within the understanding of the jury.  Nor do they have universal

3  meaning in patent cases and must be construed in order to resolve the parties' dispute

4  regarding the outer boundaries of an invention.  See, e.g., Ortho-McNeil Pharm., Inc. v.

5  Caraco Pharm. Labs., Inc., 476 F.3d 1321, 1326 (Fed Cir. 2007).  "Claim construction is a

6  matter of resolution of disputed meanings and technical scope, to clarify and when

7  necessary to explain what the patentee covered by its claims, for use in the determination

8  of infringement."  See, e.g., United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554,

9  1568 (Fed. Cir. 1997).  Therefore, the Court must determine how a person of ordinary

10  skill in the art, who has read the terms in the context of the claims, the specification, and

11  the prosecution history, would have understood the terms at the time of the invention.

12  Ortho-McNeil Pharm., 476 F.3d at 1326.  Accordingly, the Court will construe the terms.

13          **1.          "Collar Housing"**

14          Defendants propose the construction, "a fully enclosed case and support for a

15  mechanism."  Defendants' Opening Brief at p. 5.  Plaintiffs agree that the construction

16  should include the "fully enclosed case" language.  Plaintiffs' Opening Brief at p. 9.  The

17  agreement ends there.  Plaintiffs contend that "collar housing" is properly construed as

18  "the case or enclosure designed to cover and protect electronic and mechanical

19  components of the animal collar.  The 'collar housing' would include any doors or covers

20  which serve to complete the enclosure, and if the collar is a no-bark collar, the collar

21  housing would include any bark sensor."  Plaintiffs' Opening Brief at p. 9.  Plaintiffs'

22  lengthy proposed construction, however, includes elements that are not found in or

23  required by the claim, including a "door" and "wings."  Construing the claim by referring

24  to those other elements fails to elucidate the claim language and fails to give the claim the

25

26  ORDER CONSTRUING CLAIMS
   OF THE '014 AND '082 PATENTS - 6

1    "broadest reasonable construction." Phillips, 415 F.3d at 1316.  In the absence of any

2    definition in the claims, the Court looks to the specification.  The common portion of the

3    specification describes a "collar housing for containing the stimulating unit and for

4    supporting the electrodes." '082 Patent at col. 3, lines 34-37; id. at col. 5, lines 37-40

5    (describing the collar housing "for containing a receiving unit," a "stimulating unit," and

6    "a power supply").  The '014 patent also states that if the collar is "a no-bark collar, the

7    collar housing . . . will include a bark sensor." '014 Patent at col. 4, lines 41-43.

8    However, to require that the collar housing include the bark sensor, as plaintiffs urge,

9    would impermissibly import limitations from the specifications into the claim.  Phillips,

10   415 F.3d at 1323.  Similarly, the dictionary definition on which plaintiff relies defines of

11   "housing" as a "case or enclosure to cover and protect a structure or a mechanical

12   device."  Plaintiff's Ex. G (McGraw-Hill Dictionary of Scientific and Technical Terms,

13   (McGraw-Hill, 6th ed. 2003) at p. 1015).  That definition, like the claims, do not require

14   that the housing cover *all* mechanical devices.  Therefore, in light of the claim language

15   and specification, one of ordinary skill in the art would have understood the term "collar

16   housing" to mean the "fully enclosed case supporting the electrode(s) and covering

17   components of the animal collar."

18         **2.      "Inside Surface"**

19         The term "inside surface" is in dispute.  Consistent with the specifications, the

20   parties agree that the inside surface can be defined, at least, as the "portion of the collar

21   housing facing inwards towards the animal." Defendants' Opening Brief at p. 6;

22   Plaintiff's Opening Brief at p. 10; '014 Patent at col. 4, lines 47-48; '082 Patent at col. 5,

23   lines 47-50.  Not only is that construction consistent with the cited portions of the

24   specifications, it is also consistent with the specifications' references to the other surfaces,

25

26   ORDER CONSTRUING CLAIMS
     OF THE '014 AND '082 PATENTS - 7

1  including the "outside surface" that "faces away from the animal during use." '014

2  Patent at col. 4, lines 44-48.  Plaintiffs seek to add a paragraph to the construction, but

3  doing so is unnecessary because the term is unambiguous after an examination of only the

4  intrinsic evidence.  Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323,

5  1332 (Fed. Cir. 2001).  Therefore, the Court construes the term "inside surface" as the

6  "portion of the collar housing facing inwards towards the animal."

7       **3.**     **"Electrode"**

8       Defendants suggest the following construction for electrode: "structure through

9  which a stimulus is transmitted to the animal."  That construction is consistent with the

10  term's ordinary meaning and with the specifications, which state "a stimulus (normally an

11  electric stimulus) that is transmitted to the animal through one or more electrodes." '014

12  Patent at col. 1, lines 29-31; '82 Patent at col. 1, lines 38-40.  Plaintiffs contend,

13  "'Electrode' is properly construed as an electrically conductive component extending

14  from the inside surface toward the animal during use.  The 'electrode' is distinct from the

15  collar housing and must intersect the inside surface of the collar housing."  Plaintiffs'

16  Opening Brief at p. 13.  Plaintiffs' proposed "must intersect" and "extending from the

17  inside surface" language is redundant with other claim language and need not be repeated

18  in the construction of "electrode."  Similarly, construction of the term should omit any

19  reference "to the animal" or "toward the animal" as the parties suggest because that

20  language is unnecessary and redundant.  Therefore, one skilled in the art would have

21  understood the term to mean "a structure through which a stimulus is transmitted."

22       **4.**     **"Electrode Base"**

23       Defendants contend that the "electrode base" should be construed as "portion of

24  the inside surface at which the electrode intersects the inside surface."  Defendants'

25

26  ORDER CONSTRUING CLAIMS
OF THE '014 AND '082 PATENTS - 8

1    Opening Brief at p. 9.  Defining the "electrode base" as a portion of the inside surface,

2    however, is inconsistent with the claim language.  Rather, that language states that the

3    collar has "at least one electrode intersecting said inside surface at an electrode base . . . "

4    '014 Patent at col. 9, lines 6-7; '082 Patent at col. 6, lines 1-5.  Therefore, the claims do

5    not define the electrode base as a part of the inside surface.

6        Plaintiffs urge the construction of "electrode base" as "the portion of the

7    'electrode' that intersects the inside surface of the collar housing.  Further, the 'electrode

8    base' is part of the electrode and not a structure defined by the collar housing."  Plaintiffs'

9    Opening Brief at p. 13.  The second sentence of plaintiffs' proposed construction repeats

10   portions of the first sentence and is unnecessary.  The Court did not consider the letter

11   from counsel cited by plaintiffs because the term can be construed based on the intrinsic

12   evidence.  Based on the intrinsic evidence, the Court finds that one of ordinary skill in the

13   art would have understood the term to mean "the portion of the electrode where it

14   intersects the inside surface of the collar housing."

15       **5.       "Intersecting"**

16       Plaintiffs contend that "intersecting" is "properly construed as passing through or

17   across.  Intersection is more than mere abutment."  Plaintiffs' Opening Brief at p. 13.  In

18   support, plaintiffs rely on a dictionary definition.  While reliance on a dictionary

19   definition is permitted, it is unnecessary in this case and would improperly limit the

20   claims.  Moreover, the specifications state that electrodes or sensors "extend from or

21   through an inside surface," which is consistent with the claim language.  '014 Patent at

22   col. 2, lines 28-30; '082 Patent at col. 2, lines 39-41.  Therefore, one of ordinary skill in

23   the art would have understood the term "intersecting" to mean "extending from or

24   through."

25

26   ORDER CONSTRUING CLAIMS
     OF THE '014 AND '082 PATENTS - 9

1

### 6.    "High Point Surface"

2      Defendants propose a construction stating that the high point surface is "a portion

3  of the inside surface that extends above at least one electrode."  Defendants' Opening

4  Brief at p. 10.  The parties agree that the high point surface is a portion of the inside

5  surface.  The remainder of defendants' proposed construction, however, simply reiterates

6  other portions of the claim and is therefore unhelpful.  Plaintiffs' proposed construction,

7  which comprises a paragraph, is unnecessarily complicated and redundant.  Moreover,

8  plaintiffs contend that the proper construction of the term should include language that

9  the "high point surface" is "defined by something other than the curvature of the inside

10  surface to conform the inside surface to the general contours of the animal's body."

11  Plaintiffs' Opening Brief at p. 15.  Plaintiffs argue that a surface that merely extends

12  "around" an animal's neck does not extend "toward" the animal as required by the claim.

13  Without commenting on the merits of that argument, it is better directed to the definition

14  of the word "toward" rather than a construction of the term "high point surface."

15      The specifications of the '014 patent state that the high point surfaces "are raised

16  portions of inside surface," which is consistent with the claim language.  Similarly, the

17  abstract of the '014 patent defines the high point surface as being "raised."  The United

18  States Patent and Trademark Office ("USPTO") examiner found novelty in the fact that

19  the invention included high points of the inside surface, as opposed to prior art, which had

20  no other raised surfaces besides, at most, the electrodes.  See Plaintiffs' Opening Brief,

21  Ex. N (Notice of Allowability).

22      In light of that history and the intrinsic evidence, the Court construes the term as a

23  "raised portion of the inside surface."  The Court declines plaintiffs' invitation to define

24  "raised" because that term is within the understanding of jurors.

25

26  ORDER CONSTRUING CLAIMS
    OF THE '014 AND '082 PATENTS - 10

1    **7.    "Outside of a Central Area of Said Housing, Said Central Area Located**

2    **Between Said First Electrode Base and Said Second Electrode Base"**

3    Plaintiffs' proposed construction is complicated and less clear than the claim

4    language.  Equally problematic, it includes limitations that are not supported by the claim

5    language or specifications.  For those reasons, the Court will not adopt plaintiffs'

6    proposed construction, which seeks to limit the "central area" to (1) the space between the

7    "inner margins" of the first and second electrode bases, and (2) space extending laterally

8    across the collar housing.  Plaintiffs' Opening Brief at p. 22.  Furthermore, nothing would

9    be gained by adopting plaintiffs' proposed construction that "outside of a central area"

10   means any portion which is "not within the central area."  Id.  Based on a review of the

11   intrinsic evidence, the Court finds that the only term that is initially unclear is the "central

12   area," but that term is defined by the subsequent text.  The Court has already construed

13   the term "electrode base."  Any further attempt to define those terms is unnecessary and

14   would improperly impose limitations on them.  Accordingly, the Court declines to

15   construe the term.

16   **8.    "Extending Above" and "Closer to the Animal During Use"**

17   Plaintiffs contend that these two terms are indefinite, rendering the claims invalid

18   under 35 U.S.C. § 112.  The statute provides,

19   The specification shall contain a written description of the invention, and of the
     manner and process of making and using it, in such full, clear, concise, and exact
20   terms as to enable any person skilled in the art to which it pertains, or with which it
     is most nearly connected, to make and use the same, and shall set forth the best
21   mode contemplated by the inventor of carrying out his invention.

22   The specification shall conclude with one or more claims particularly pointing out
     and distinctly claiming the subject matter which the applicant regards as his
23   invention.

24   35 U.S.C. § 112.  The requirement in the second paragraph "serves a public notice

25

26   ORDER CONSTRUING CLAIMS
     OF THE '014 AND '082 PATENTS - 11

1  function, ensuring that the patent specification adequately notifies the public of the scope

2  of the patentee's right to exclude." Praxair, Inc., 543 F.3d at 1319.  "A claim satisfies the

3  definiteness requirement of § 112 if one skilled in the art would understand the bounds of

4  the claim when read in light of the specification." Id. (internal citation and quotation

5  omitted).  A claim will be found to be indefinite only if it is insolubly ambiguous, and no

6  narrowing construction can properly be adopted." Exxon Research & Eng'g Co. v.

7  United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  Although defendants argue that a

8  determination of definiteness is premature, the Court must determine whether the terms

9  are "amenable to construction." Honeywell Int'l v. Int'l Trade Comm'n, 341 F.3d 1332,

10  1338 (Fed. Cir. 2003) (internal citation and quotation omitted).  Therefore, the Court

11  construes the term "extending above" as part of the claim construction process.  In doing

12  so, the Court is mindful of the fact that it cannot "rewrite claims to preserve validity." Id.

13  at 1341.

14      Claim 1 of each patent requires "at least one high point surface extending above

15  said electrode base."  Claim 4 of the '014 patent reads:

16  The animal collar according to claim 1, wherein said at least one electrode has a
    distal end opposite said electrode base and extending toward the animal during
17  use, and wherein said distal end is no more than 3/8 inch (0.95 cm) **closer to the
    animal during use** than said at least one high point surface.
18
    Claim 3 of the '082 patent reads:
19
    The animal collar according to claim 1, wherein said first electrode has a first
20  electrode distal end opposite said first electrode base and extending toward the
    animal during use, and wherein said second electrode has a second electrode distal
21  end opposite said second electrode base and extending toward the animal during
    use, and wherein said first electrode distal end and said second electrode distal end
22  are no more than 3/8 inch (0.95 cm) **closer to the animal during use** than said at
    least one high point surface.
23
    Plaintiff notes that although the '014 Patent describes the electrode as intersecting the
24
    inside surface of the collar housing at an "electrode base," the claim does not otherwise
25

26  ORDER CONSTRUING CLAIMS
    OF THE '014 AND '082 PATENTS - 12

1   define the electrode base.  Therefore, plaintiff contends, the term "does not provide a

2   point certain from which to measure the relative heights of the 'electrode base' and the

3   'high point surface.'"  Plaintiffs' Opening Brief at p. 16.  Defendants note that the

4   specification of the '014 Patent teaches that the "distal end 28 of electrodes 4 should not

5   extend above high point surfaces C, D, E by more than 3/8 inch (0.95 cm)."  '014 Patent

6   at col. 6, lines 10-12.  The phrase, however, does not identify the measurement point on

7   the electrode base.

8        Plaintiffs concede that there is one construction of the term "extending above"

9   which could render the claims definite.  The written description in the '014 Patent states,

10       Referring to FIG. 7, the one or more high point surfaces C, D, E, are raised
         portions of inside surface 18 extending above electrode base 26 and towards the
11       animal and are designed to intersect with a notional 90-degree plane 32 extended
         from any point X, above the level of electrode or sensor base 26, along central
12       longitudinal axis 30 of electrodes or sensors 24, 90.

13   '014 Patent at col. 5, lines 32-38.  Although the Court is not permitted to rewrite the

14   claims under the guise of construction, it is permitted to interpret the claims "in view of

15   the written description."  Honeywell Int'l, 341 F.3d at 1338.  Because the description in

16   the '014 Patent describes a method of measurement, the claim is not "insolubly

17   ambiguous."  Cf. id. at1339 (holding that a claim was indefinite where "neither the

18   claims, the written description, nor the prosecution history reference any of the four

19   sample preparation methods that can be used to measure the MPE.").  The intrinsic

20   evidence does not suggest any other method of measurement.  Therefore, in light of the

21   description, the portion of the electrode base that should be used in the "extending above"

22   measurement is the point where the longitudinal axis of the electrode base meets the

23   inside surface.

24        Plaintiff also argues that the term "closer to the animal during use" is indefinite

25

26

1   because there is no construction that would serve to inform the public regarding the scope

2   of the patentee's rights.  However, the description of the '014 Patent provides:

3       Referring to Fig. 9, the applicant has found it advantageous if collar housing 12 is
        designed so that the point X on longitudinal axis 30, from which notional 90-
4       degree plane 32 is extended, is located less than 3/8 inch (0.95 cm) down from
        distal end 28 of the one or more electrodes 24.  That is, distal end 28 of electrodes
5       4 should not extend above high point surfaces C, D, E by more than 3/8 inch (0.95
        cm).

6
    '014 Patent at col. 6, lines 6-13.  Therefore, the description provides a construction that is
7
    sufficiently definite, so the claims are not invalid.  One of ordinary skill in the art would
8
    understand that the distal ends of the electrodes should be no more than 3/8 inch (0.95
9
    cm) higher than a high point surface.  Although plaintiffs contend that such a construction
10
    is still indefinite, "a sound claim construction need not always purge every shred of
11
    ambiguity."  Acumed LLC v. Stryker Corp., 483 F.3d 800, 806 (Fed. Cir. 2007) (noting
12
    that the claim construction, which was "correct," contained "some area of imprecision").
13
        It is so ORDERED.
14
        DATED this 20th day of May, 2010.
15

16

17                                      MW S Lasnik

18                                      Robert S. Lasnik
                                        United States District Judge
19

20

21

22

23

24

25

26  ORDER CONSTRUING CLAIMS
    OF THE '014 AND '082 PATENTS - 14