1

2

3

4

5

The Honorable Robert S. Lasnik

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9

10

11

12

13

RADIO SYSTEMS CORPORATION and
INNOTEK, INC.,

                  Plaintiffs,

               vs.

TOM LALOR, individually, and BUMPER
BOY, INC.,

              Defendants.

Case No. 2:10-cv-00828 RSL

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

NOTE ON MOTION CALENDAR: September
30, 2011

ORAL ARGUMENT REQUESTED

14

15

16

17

18

19

20

21

22

23

24

25

26

## I.  **INTRODUCTORY STATEMENT**

     This lawsuit concerns whether four designs for animal collars (the "Accused Designs")

made and sold by Plaintiffs Radio Systems Corporation ("Radio Systems") and Innotek, Inc.

("Innotek") infringe U.S. Patent Nos. 6,830,014 ("the '014 Patent") and 7,267,082 ("the '082

Patent"), owned by Defendant Tom Lalor ("Lalor").[1]  *See* **Exh. 1** ('014 Patent, previously filed

as Doc. 1-2) & **Exh. 2** ('082 Patent, previously filed as Doc. 1-3).[2]  Radio Systems and Innotek

are entitled to summary judgment as a matter of law on three independent grounds:  (1) The

---

[1] Defendant Bumper Boy, Inc. ("Bumper Boy") does not claim to have any ownership interest in the '014
Patent or the '082 Patent.  It is a party to this lawsuit because it (along with Lalor) sent a cease and desist
letter to Innoek accusing it of infringement of the patents at issue and threatening legal action.  Thus,
Radio Systems and Innotek seek declaratory relief as to both Bumper Boy and Lalor.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

claims in the patents at issue are invalid under 35 U.S.C. §102 because they are anticipated by prior art; (2) Three of the Accused Designs do not infringe the patents at issue under the Court's claim construction; and (3) The equitable doctrines of estoppel and laches bar any infringement claim due to unreasonable delay.  Because Radio Systems and Innotek are entitled to summary judgment on liability, they are also entitled to the permanent injunction they seek.

## II.   BACKGROUND AND UNDISPUTED FACTS

In or about 1991, Invisible Fence, Inc. ("Invisible Fence") designed the animal collar that is the subject of U.S. Patent No. Des. 330,173 to Juliana (the "'173 Patent" or "Juliana").  Juliana issued on October 13, 1992.  **Exh. 3** (the '173 Patent).  As depicted in **Illustration A**, the animal collar of Juliana discloses a housing with a curved inner surface meant to conform to the neck of the animal. *Id.*



*Illustration A*

In or about 1997, Innotek designed the animal collar that has come to be known as the "Elite Receiver."  **Exh. 4** (Declaration of Travis Vickery in Support of Motion for Summary Judgment ("Vickery Decl.")), ¶ 2.  The Elite Receiver was never commercially produced.  Its design was, however, publically disclosed to third parties who were not under an obligation of confidentiality.  *Id.*  As depicted in **Illustration B**, the Elite Receiver included a collar housing having a curved inner surface, with the housing



*Illustration B*

---

[2] All boldface citations to exhibits in this brief (*e.g.*, "**Exh. 1**") refer to exhibits to the Declaration of Regina V. Culbert ("Culbert Decl.").  Courtesy copies of the Culbert Decl. will be delivered to chambers and to opposing counsel.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 2
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
Law Group PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1    having a high point surface above the base of the electrodes.  *Id.* at ¶ 3.

2        In 2000, KINO Holdings, Inc., acquired Innotek.  **Exh. 7** (Affidavit of Jennifer

3    Waterhouse in Support of Plaintiffs' Opening Claim Construction Brief, previously filed as Doc.

4    32, Exh. E  ("Waterhouse Aff.")), ¶ 2.  In 2001, Innotek acquired Invisible Fence.  *Id.*  Although

5    Innotek and Invisible Fence remained separate corporate entities, they shared technology.  *Id.*



*Illustration C*

6        In  or  about  2004,  Innotek

7    produced the animal collar sold as the

8    UltraSmart collar.  **Exh. 6** (Affidavit of

9    Travis Vickery In Support of Plaintiffs'

10   Opening  Claim  Construction  Brief,

11   previously filed at Doc. 32, ("Vickery

12   Aff.") Exhibit Q), ¶ 2.   Lalor refers to the UltraSmart collar as Collar #1.  *See* **Exh. 8**

13   (Defendants' Preliminary Infringement Contentions).  As depicted in **Illustration C**, the housing

14   of the UltraSmart collar incorporated a curved inner surface that roughly conformed to the neck

15   of the animal, much like the earlier collar of Juliana produced by Invisible Fence.  *See* **Exh. 4**,

16   Vickery Decl., at ¶ 4.



*Illustration D*

17   Innotek  produced  the  animal  collar

18   that was private labeled by Cabela's as the

19   Model GS-011, which was first sold in or

20   around 2006 as part of Cabela's "Gun Dog

21   Series."  **Exh. 4** (Vickery Decl.), ¶ 5.  Lalor

22   refers to Model GS-011 as Collar #3.  **Exh.**

23   **8**  (Defendants'  Preliminary  Infringement

24   Contentions).  As depicted in **Illustration D**, the housing of Model GS-011 incorporated an inner

25   surface that roughly conformed to the neck of the animal.  **Exh. 4** (Vickery Decl.), ¶ 5.

26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 3
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1     In 2005, Innotek introduced the FieldPro

2  collar, which is depicted in **Illustration E**.  The

3  FieldPro collar included a collar housing that

4  incorporated a curved inner surface, which

5  roughly conformed to the neck of the animal.

6  **Exh. 4** (Vickery Decl.), ¶ 6.



*Illustration E*

7     On August 5, 2003, Lalor filed the

8  patent application that resulted in the issuance

9  of the '014 Patent on December 14, 2004.  **Exh. 1** (the '014 Patent).  Innotek had no knowledge

10  of the application.  It first became aware of the '014 Patent when it received a cease and desist

11  letter from Lalor's counsel, dated February 21, 2005.   **Exh. 5** (Declaration of Jennifer

12  Waterhouse in Support of Motion for Summary Judgement ("Waterhouse Decl.")), ¶ 2 (referring

13  to **Exh. 9**).  The letter asserted that the UltraSmart collar infringed the '014 Patent and demanded

14  that Innotek immediately cease production of the collar and destroy any inventory or pay a

15  royalty.  **Exh. 9** (February 21, 2005 letter). On April 29, 2005, Innotek's counsel responded to

16  the letter, detailing the obvious invalidity of the '014 Patent and asserting the Elite Receiver as

17  prior art.  **Exh. 10** (April 29, 2005 letter) & **Exh. 5** (Waterhouse Decl.), ¶ 3.  Innotek received no

18  response to the April 29, 2005 letter, and the UltraSmart collar remained in the market.  **Exh. 5**

19  (Waterhouse Decl.), ¶ 4.

20     On December 30, 2005, Lalor filed a continuation application in an effort to overcome

21  the invalidity issues raised in Innotek's April 29, 2005 letter.  *See* **Exh. 2**. Innotek had no

22  knowledge of the continuation application.  **Exh. 5** (Waterhouse Decl.), ¶ 5.  The '082 Patent

23  issued on September 11, 2007.

24     In 2006, Radio Systems acquired KINO Holdings, Inc., thus acquiring an interest in

25  Innotek and Invisible Fence, Inc.  **Exh. 7** (Waterhouse Aff.), ¶ 3.

26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 4
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

In or about March 2009, Radio Systems brought the
basic design of the Innotek GS-011 collar into its
sportDOG® product line in the form of the SD-1825,
which is depicted in **Illustration F**.  **Exh. 4** (Vickery
Decl..), ¶7 .  Lalor refers to the SD-1825 as Collar #2.
**Exh. 8** (Prelim. Infringe. Contentions).



*Illustration F*

In or about April 2009, Radio Systems brought the basic design of the UltraSmart collar
into its PetSafe Venture Series.  **Exh. 6** (Vickery Aff.), ¶ 5.  **Illustration C**, above, depicts the
UltraSmart collar.

By letter dated November 19, 2009, more than two years after the issuance of the
continuation '082 Patent, counsel for Lalor and Bumper Boy sent a cease and desist to Radio
Systems.  **Exh. 11** (November 19, 2009 letter) & **Exh. 5** (Waterhouse Decl. ¶ 5.  The letter
asserted that the Innotek UltraSmart collar, the SportDog SD 1825 SportHunter, and the
SportDog Wetland Hunter 1825 collars infringed both the '014 and the '082 Patents.  **Exh. 11**
(November 19, 2009 letter).

On May 18, 2010, in the face of threatened litigation, Radio Systems and Innotek
initiated this declaratory judgment action after efforts to resolve the controversy failed.  Lalor
and Bumper Boy did not assert their counterclaims of infringement until August 27, 2010, five
and one-half years after their first cease and desist letter.

### III.   <u>STANDARD OF DECISION</u>

Summary judgment as to patent issues is decided according to the familiar standards set
forth in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and its progeny.  *See Apple
Computer Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 20 ( Fed. Cir. 2000). Claims of invalidity
and noninfringement may be decided on summary judgment if the record reveals no genuine

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 5
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

dispute of material fact. *Leggett & Platt, Inc., et al. v. VUTEK, Inc.,* 537 F.3d 1349, 1352 (Fed. Cir. 2008); *All Dental Prodx LLC, et al. v. Advantage Dental Prods. Inc.*, 309 F.3d 774, 780 (Fed. Cir. 2002). Likewise, the applicability of the equitable doctrines of laches and estoppel may be decided on summary judgment. *Ultimax Cement Mfg. Corp., et al. v. CTS Cement Mfg. Corp., et al.*, 587 F.3d 1339, 1349 (Fed. Cir. 2009); *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1043 (Fed. Cir. 1992). Summary judgment of invalidity must be shown by clear and convincing evidence. *See Apple Computer*, 234 F.3d at 20. Summary judgment of non-infringement must be shown by the absence from the accused device of claim limitations, either literally or by substantial equivalent. *Johnston, et al. v. IVAC Corp.,* 885 F.2d 1574, 1578 (Fed. Cir. 1989) (further citations omitted) (general assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant/patentee's burden).

## IV.   CLAIM CONSTRUCTION

The first step in any invalidity or infringement analysis is claim construction. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1304 (Fed. Cir. 1999); *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.,* 344 F.3d 1186, 1192 (Fed. Cir. 2003). The Court construed certain terms of the claims in its *Order Construing Claims of the '014 and '082 Patents* (the "Claim Construction Order"). **Exh. 12** (Doc. 39). Of particular significance to the present Motion is the Court's construction of the terms "electrode" and "electrode base." The Court construed "electrode" to mean "a structure through which a stimulus is transmitted" and construed "electrode base" as "the portion of the electrode where it intersects the inside surface of the collar housing." *Id.* at 9. Thus, the Court construed the electrode as a structure on the inside surface of the collar house, the base of

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

which intersects the inside surface of the collar housing.  Thus, the collar housing and the electrode constitute separate structures, and the "electrode base" is defined by the electrode and not by any portion of the collar housing.

Also of significance to this Motion is the Court's construction of "extending above," as used in the phrase "at least one high point surface extending above said electrode base" in Claim 1 of the '014 Patent.  **Exh. 1** (the '014 Patent), at Col. 9, lines 9-10.  In the Claim Construction Order, the Court noted Radio Systems and Innotek's concession that there was one construction that would render the term "extending above" definite, and quoted the following language from the specification:

> Referring to FIG. 7, the one or more high point surfaces C, D, E, are raised portions of the inside surface 18 extending above electrode base 26 and towards the animal and are designed to intersect with a notional 90-degree plane 32 extended from any point X, above the level of electrode or sensor base 26, along central longitudinal axis 30 of electrodes or sensors 24, 90.

**Exh. 12** (Doc. 39), at 13 (quoting '014 Patent, Col. 5, lines 32-38).  Acknowledging this construction, the Court construed the claims to require that Point X be "the point where the longitudinal axis of the electrode base meets the inside surface." *Id.*  Therefore, a "high point surface" must be defined as the place where a notional 90-degree plane located on the longitudinal axis of the electrode at the electrode base intersects a raised portion of the collar housing.

## V.    ARGUMENT

### A.    All Claims Of The '014 And '082 Patents Are Anticipated By One Or More Prior Art References And Are Therefore Invalid.

It is undisputed that the priority date for the '014 Patent is August 5, 2003.  U.S. Patent No. 5,872,516 (the "'516 Patent" or "Bonge") issued on February 16, 1999.  **Exh. 13** (Bonge

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 7
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

patent).   U.S. Patent No. Des. 330,173 (the "'173 Patent" or "Juliana") issued on October 13, 1992.  **Exh. 3** (Juliana).  As shown in the Expert Report of Duane A. Gerig ( "Gerig Rep.") and the Expert Report of Michael David Westrick ("Westrick Rep."), the Asserted Claims of the '014 Patent and the '082 Patent were anticipated by both Bonge and Juliana.  **Exh. 14** (Gerig Rep.) & **Exh. 15** (Westrick Rep.).  For ease of reference, **Exhibit 16** sets forth a limitation-by-limitation comparison of the Asserted Claims of the '014 Patent to the claims of Bonge and Juliana.  As shown on **Exhibit 16**, both Bonge and Juliana are prior art to the '014 Patent under 35 U.S.C. §102(b).

> **1.**    **All Asserted Claims of the '014 Patent are anticipated by U.S. Patent No. 5,872,516 to Bonge and, separately, by U.S. Patent No. Des. 330,173 to Juliana.**

Lalor contends that the Accused Designs infringe Claims 1, 4, 5, 7, 16, 17 and 18 of the '014 Patent.  **Exh. 8** (Doc. 33).  Each of these claims is anticipated by U.S. Patent No. 5,872,516 to Bonge and, separately, by U.S. Patent No. Des. 330,173 to Juliana.  **Exh. 14** (Gerig Rep.) & **Exh. 15** (Westrick Rep.).   The asserted claims are, therefore, invalid under 35 U.S.C. §102.  Radio Systems and Innotek are entitled to a judgment of invalidity.

> **a.**    **Claim 1**

Claim 1 of the '014 Patent claims:

> An animal collar designed for attachment to an animal comprising: a collar housing having an inside surface directed toward the animal during use; and at least one electrode intersecting said inside surface at an electrode base and extending toward the animal during use; said inside surface having at least one high point surface extending above said electrode base and toward the animal during use.

**Exh. 1** (014 Patent), Col. 9, lines 2-11.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 8
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Each element of Claim 1 of the '014 Patent is shown in Bonge. Figures 12 and 13 of Bonge disclose an animal collar. Figures 1 and 2 of Bonge show that the collar is designed for attachment to an animal. **Illustration G** annotates Figure 12 of Bonge for purposes of the following discussion. **Illustration G** shows that Bonge discloses a collar housing **<12>** having an inside surface **<18>** directed toward the animal during use. **Illustration G** also shows that Bonge discloses a pair of electrodes **<24>** intersecting the inside surface **<18>** of the collar housing **<12>** at an electrode base **<26>** and extending toward the animal during use. **Illustration G** also shows that Bonge discloses high point surfaces **<D>** and **<E>** which extend above the point **<X>** at each electrode base **<26>,** which



*Illustration G*



*Illustration H*

correspond to the high point surfaces "extending above" the electrode base as construed by the Court. Thus, each limitation of Claim 1 of the '014 Patent is disclosed in Bonge. Claim 1 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

Juliana also discloses an animal collar designed for attachment to an animal. **Illustration H** annotates Figure 3 of Juliana for the purposes of the following discussion. **Illustration H**

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

shows that Juliana also discloses a collar housing **<12>** having an inside surface **<18>** that is directed toward the animal during use, a pair of electrodes **<24>**, each intersecting the inside surface **<18>** of the collar housing **<12>** at an electrode base **<26>** and extending toward the animal during use. **Illustration H** shows that Juliana also discloses high point surfaces **<D>** and **<E>** which extend above the point **<X>** at each electrode base **<26>**.  Thus, each limitation of Claim 1 of the '014 Patent is disclosed in Juliana.  Claim 1 is invalid under 35 U.S.C. §102 because it is also anticipated by Juliana.

    **b.**  **Claim 4**

    Claim 4 of the '014 Patent claims:

> The animal collar according to claim 1, wherein said at least one electrode has a distal end opposite said electrode base and extending toward the animal during use, and wherein said distal end is no more than 3/8 inch (0.95 cm) closer to the animal during use than said at least one high point surface.

**Exh. 1** (014 Patent), Col. 9, lines 19-24.

    Each element of Claim 4 of the '014 Patent is shown in Bonge.  **Illustration G**, above, shows that Bonge discloses electrodes **<24>** having distal ends **<28>** opposite the associated electrode base **<26>** which extend toward the animal during use.  **Illustration G** also shows that Bonge discloses that the electrodes **<24>** are shorter than the high point surfaces **<D>** and **<E>**.  As shown in **Illustration G**, the distal ends **<28>** are, therefore, "no more than 3/8 inch (0.95 cm) closer to the animal during use than" the high point surface **<D>** and **<E>** as required by Claim 4.  Thus, each limitation of Claim 4 of the '014 Patent is disclosed in Bonge.  Claim 4 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

    **Illustration H**, above, shows that Juliana also discloses a high point surface **<D>** extending above notional 90-degree plane **<33>** at the distal end **<28>** of the electrode **<24>**.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 10
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Exh. 13 (Juliana).  **Illustration G** also shows that in the collar of Juliana the electrode **<24>** is shorter than the high point surface **<D>**.  As shown in **Illustration H**, the distal end **<28>** is, therefore, "no more than 3/8 inch (0.95 cm) closer to the animal during use than" the high point surface **<D>** as required by Claim 4.  Thus, each limitation of Claim 4 of the '082 Patent is disclosed in Juliana.  Claim 4 is invalid under 35 U.S.C. §102 because it is also anticipated by Juliana.

        c.      **Claim 5**

Claim 5 of the '014 Patent claims:

> The animal collar according to claim 1, wherein said collar housing is connected to a connecting strap adapted for attaching said collar to the animal.

**Exh. 1** (014 Patent), Col. 9, lines 25-27.

**Illustration G**, above, shows that Bonge discloses a connecting strap <29> adapted for attaching the collar to the animal.  Thus, each limitation of Claim 5 of the '014 Patent is disclosed in Bonge.  Claim 5 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

**Illustration H**, above, shows that Juliana also discloses a connecting strap adapted for attaching the collar to the animal in phantom lines.  Thus, each limitation of Claim 5 of the '014 Patent is disclosed in Juliana.  Claim 5 is invalid under 35 U.S.C. §102 because it is anticipated by Juliana.

        d.      **Claim 7**

Claim 7 of the '014 Patent claims:

> The animal collar according to claim 1, wherein said collar housing contains a receiver unit for receiving remote signals, and a stimulating unit for generating an electric stimulus for delivery through said at least one electrode upon receipt of said remote signals.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

**Exh. 1** (014 Patent), Col. 9, lines 25-27.

Bonge discloses the use of a receiver for receiving remote signals, housed within a collar housing.  **Exh. 13** (Bonge), Col. 6, lines 42-51.  Bonge also discloses the use of a stimulating unit for generating an electric stimulus for delivery through the electrodes in response to remote signals.  *Id.*, Col. 6, lines 18-26.  Accordingly, Bonge teaches the use of a collar housing containing "a stimulation unit for generating an electric stimulus for delivery through said at least one electrode upon receipt of said remote signals." Thus, each limitation of Claim 7 of the '014 Patent is disclosed in Bonge.  Claim 7 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

The additional limitation of Claim 7 is also met by Juliana.  Although Juliana does not explicitly disclose a receiver and a stimulation unit because it is a design patent, it would be inherent in Juliana that such components would be provided.  *See* **Exh. 14** (Gerig Rep.), at 10-13; **Exh. 15** (Westrick Rep.), at 7-8.  A single prior art reference that discloses, either expressly or inherently, each limitation of a claim invalidates that claim by anticipation. *See Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed. Cir. 1992).  A prior art reference without express reference to a claim limitation may nonetheless anticipate by inherency.  *See In re Cruciferous Sprout Litig.,* 301 F.3d 1343, 1349 (Fed. Cir. 2002).  "Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claims limitations, it anticipates." *Id.* (quoting *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999).  The Claim of Juliana is directed to a "combined signal receiver and buckle and clamp unit for an animal collar."  It is clear from the Claim language that a receiver unit is inherently housed within the collar housing.  Moreover, Juliana explicitly illustrates a pair of electrodes <24> that would not function without a stimulation unit.  Thus, it

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1   is inherent in Juliana that a stimulation unit be provided.  Therefore, each limitation of Claim 7

2   of the '014 Patent is explicitly disclosed or inherent in Juliana.  Claim 7 is invalid under 35

3   U.S.C. §102 because it is anticipated by Juliana.

4           e.      **Claim 16**

5           Claim 16 of the '014 Patent claims two additional limitations not included in the claims

6   discussed above:

7

8                   [A] collar housing for containing the stimulating unit; said collar
                    housing having an inside surface designed for contacting the skin
9                   of the animal during use . . . .

10  **Exh. 1** (014 Patent), Col. 10, lines 32-34.

11          **Illustration G**, above, shows that the additional limitations of Claim 16 are disclosed by

12  Bonge.  The first, a simulation unit, is discussed above with respect to Claim 7.  Further,

13  **Illustration G** shows that the collar of Bonge defines an inside surface having two high point

14  surfaces **<D>** and **<E>** that contact the skin of the animal during use.  Thus, each limitation of

15  Claim 16 of the '014 Patent is disclosed in Bonge.  Claim 16 is invalid under 35 U.S.C. §102

16  because it is anticipated by Bonge.

17          **Illustration H**, above, shows that the additional limitations of Claim 16 are also met by

18  Juliana.  **Illustration H** shows that the collar of Juliana defines an inside surface **<18>** which

19  would contact the skin of the animal during use.  Thus, each limitation of Claim 16 of the '014

20  Patent is disclosed in Juliana.  Claim 16 is invalid under 35 U.S.C. §102 because it is anticipated

21

22  by Juliana.

23          f.      **Claim 17**

24          Claim 17 of the '014 Patent claims one additional limitation not included in the Claims

25  discussed above:

26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 13
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

> [S]aid at least one electrode having a central longitudinal axis
> extending toward the animal during use from said electrode base to
> an opposite distal end; high point surface to be "designed to
> intersect with a notional 90-degree plane extended from a point on
> said central longitudinal axis.

**Exh. 1** (014 Patent), Col. 10, lines 47-50.

Illustration G, above, shows that each limitation of Claim 17 is disclosed by Bonge.  As illustrated in **Illustration G**, a notional 90-degree plane **<32>** extending from a point one the axis of either electrode **<24>** intersects the high point surfaces **<D>** and **<E>**. Thus, each limitation of Claim 17 of the '014 Patent is disclosed by Bonge.  Claim 17 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

Illustration H, above, shows that each limitation of Claim 17 of the '014 Patent is also disclosed by Juliana.   As illustrated in **Illustration H**, a notional 90-degree plane **<32>** extending from a point on the axis **<30>** of the electrode **<24>** intersects the high point surface **<D>**.  Claim 17 is invalid under 35 U.S.C. §102 because it is anticipated by Juliana.

### g.    Claim 18

Claim 18 of the '014 Patent claims:

> The animal collar according to claim 17, wherein said point on said
> central longitudinal axis is located less than 3/8 inch (0.95 cm)
> from said distal end of said at least one electrode.

**Exh. 1** (014 Patent), Col. 10, lines 54-57.

Illustration G, above, shows that Bonge discloses a notional 90-degree plane at any point along the axis of either electrode **<24>** would intersect the high point surfaces **<D>** and **<E>**, including a point coinciding with the distal end **<28>** of the electrodes **<24>**.  Thus, each limitation of Claim 18 of the '014 Patent is disclosed in by Bonge.  Claim 18 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 14
Case No. 2:10-cv-00828 RSL

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1    **Illustration H**, above, shows that Juliana also discloses each limitation of Claim 18. As

2    illustrated in **Illustration H**, a notional 90-degree plane at any point along the axis of the

3    electrode **<24>** would intersect the high point surface **<D>**, including a point coinciding with the

4    distal end **<28>** of the electrode **<24>**. Therefore, Juliana discloses this limitation. Claim 18 is

5    invalid under 35 U.S.C. §102 because it is also anticipated by Juliana.

6        2.    **All claims of the '082 Patent are anticipated by U.S. Patent No. 5,872,516 to**
7              **Bonge and, separately, by U.S. Patent No. Des. 330,173 to Juliana.**

8        Lalor contends that the Accused Designs infringe Claims 1, 3, 4, 6, 15, and 17 of the '082

9    Patent. *See* **Exh. 8** (Prelim. Infringe. Contentions). Each of these claims is anticipated by U.S.

10   Patent No. 5,872,516 to Bonge and, separately, by U.S. Patent No. Des. 330,173 to Juliana. *See*

11   **Exh. 14** (Gerig Rep.) & **Exh. 15** (Westrick Rep.). The asserted claims are, therefore, invalid

12   under 35 U.S.C. §102. Radio Systems and Innotek are entitled to a judgment of invalidity.

13       a.    **Claim 1**

14       Claim 1 of the '082 Patent claims:

16           An animal collar designed for attachment to an animal,
17           comprising: a collar housing having an inside surface directed
             toward the animal during use; a first electrode directed toward the
18           animal during use, said first electrode intersecting said inside
             surface at a first electrode base; and a second electrode directed
19           toward the animal during use, said second electrode intersecting
             said inside surface at a second electrode base; said inside surface
20           having at least one high point surface extending above at least one
             of said first electrode base and said second electrode base and
21           toward the animal during use; said at least one high point surface
             located outside of a central area of said housing, said central area
22           located between said first electrode base and said second electrode
             base.

24   **Exh. 2** ( '082 Patent), Col. 12, lines 7-24.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

As already discussed, Bonge discloses "a collar housing having an inside surface directed toward the animal during use." *See* **Exh. 13** (Bonge).   **Illustration G**, above, shows that Bonge discloses first and second electrodes **<24>** (only one of which is labeled) directed toward the animal during use, with the first and second electrodes **<24>** intersecting the inside surface **<18>** at a first electrode bases **<26>**.   Further, as illustrated in **Illustration G** and as discussed above with respect to Claim 1 of the '014 Patent, in Bonge the inside surface **<18>** has at least one high point surface (**<D>**, **<E>**) extending above at least one of the electrode bases **<26>**, and the high point surfaces **<D>** and **<E>** both extend toward the animal during use.   Moreover, **Illustration G** shows that Bonge discloses that each high point surface **<D>** and **<E>** is located outside of the central area of the housing **<12>**, wherein the central area is located between the two electrode bases **<26>**.   Thus, each limitation of Claim 1 of the '082 Patent is disclosed by Bonge.   Claim 1 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

Claim 1 of the '082 Patent is also anticipated by Juliana.   *See* Exh. 3 (Juliana). **Illustration H**, above, shows that Juliana discloses "a collar housing having an inside surface directed toward the animal during use," the collar housing being referenced at **<12>**.   Further, **Illustration G** discloses that the Juliana collar also has first and second electrodes **<24>** (only one being labeled in the illustration) directed toward the animal during use, with the first and second electrodes **<24>** intersecting the inside surface **<18>** at a first electrode bases **<26>**.   As illustrated in **Illustration H** and as discussed above with respect to Claim 1 of the '014 Patent, in Juliana the inside surface **<18>** has at least one high point surface **<D>** extending above at least one of the electrode bases **<26>**, and the high point surface **<D>** extends toward the animal during use. Moreover, as shown in **Illustration H**, the high point surface **<D>** is located outside of the central area of the housing **<12>**, wherein the central area is located between the two

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 16
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

electrode bases <26>.  Thus, each limitation of Claim 1 of the '082 Patent is disclosed in Juliana.

Claim 1 is invalid under 35 U.S.C. §102 because it is also anticipated by Juliana.

> **b.      Claim 3**

Claim 3 of the '082 Patent adds two requirements:

> The animal collar of claim 1, wherein said first electrode has a first electrode distal end opposite said first electrode base and extending toward the animal during use, and wherein said second electrode has a second electrode distal end opposite said second electrode base and extending toward the animal during use, and wherein said first electrode distal end and said second electrode distal end are no more than 3/8 inch (0.95 cm) closer to the animal during use than said at least one high point surface.

**Exh. 2** ( '082 Patent), Col. 12, lines 28-36.

**Illustration G**, above, shows that Bonge discloses electrodes <24> having distal ends <28> opposite the associated electrode base <26> which extend toward the animal during use. **Illustration G** also shows that in the collar of Bonge the electrodes <24> are shorter than the high point surfaces <D> and <E>.  Therefore, as shown in **Illustration G**, the distal ends <28> are "no more than 3/8 inch (0.95 cm) closer to the animal during use than" the high point surface <D> and <E> as required by Claim 3.  Thus, each limitation of Claim 3 of the '082 Patent is disclosed in Bonge.  Claim 3 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

**Illustration H**, above, shows that Juliana also discloses electrodes <24> having distal ends <28> opposite the associated electrode base <26> which extend toward the animal during use.  Moreover, as noted above the Court construed the "closer to the animal during use" language of the Claim to refer to the relative height of the electrode and the high point surface. As illustrated in **Illustration H**, the high point surface <D> extends above notional 90-degree plane <33> at the distal end <28> of the electrode <24>.  **Illustration G** shows that in the collar

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

of Juliana the electrode **<24>** is shorter than the high point surface **<D>**.  Therefore, as shown in **Illustration H**, the distal end **<28>** is "no more than 3/8 inch (0.95 cm) closer to the animal during use than" the high point surface **<D>** as required by Claim 3.  Thus, each limitation of Claim 3 of the '082 Patent is disclosed in Juliana.  Claim 3 is invalid under 35 U.S.C. §102 because it is also anticipated by Juliana.

     **c.**  **Claim 4**

   Claim 4 of the '082 Patent adds the further limitation to Claim 1 that the

> collar housing is connected to a connecting strap adapted for attaching said collar to the animal

**Exh. 2** ( '082 Patent), Col. 12, lines 37-39

   **Illustration G**, above, shows that Bonge discloses a connecting strap 29 adapted for attaching the collar to the animal.  Thus, each limitation of Claim 4 of the '082 Patent is disclosed by Bonge.  Claim 4 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

   **Illustration H**, above,shows that Juliana also discloses a connecting strap in phantom lines adapted for attaching the collar to the animal.  Thus, each limitation of Claim 4 of the '082 Patent is disclosed in Juliana.   Claim 4 is also invalid under 35 U.S.C. §102 because it anticipated by Juliana.

     **d.**  **Claim 6**

   Claim 6 of the '082 Patent adds the further limitation to Claim 1:

> The animal collar according to Claim 1 wherein said collar housing contains a receiver unit for receiving remote signals, and a stimulating unit for generating an electric stimulus for delivery through said at least one electrode upon receipt of said remote signals.

**Exh. 2** ( '082 Patent), Col. 12, lines 44-47.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1
2
3
4
5
6

As discussed above with respect to Claim 7 of the '014 Patent, Bonge teaches the use of a receiver for receiving remote signals housed within a collar housing, and also teaches the use of a collar housing containing "a stimulation unit for generating an electric stimulus for delivery through said at least one electrode upon receipt of said remote signals." *See* **Exh. 13** (Bonge). Therefore, each limitation of Claim 6 of the '082 Patent is disclosed in Bonge.  Claim 6 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

7
8
9
10
11
12

As discussed above with respect to Claim 7 of the '014 Patent, it is inherent in Juliana that a receiver and stimulation unit housed within a collar housing would be used.  *See* **Exh. 14** (Gerig Rep.), at 35-38; **Exh. 15** (Westrick Rep.), at 31-32.  Therefore, each limitation of Claim 6 of the '082 Patent is disclosed or inherent in Juliana.  Claim 6 is also invalid under 35 U.S.C. §102 because it is anticipated by Juliana.

13

      **e.**    **Claim 15**

14
15
16

Claim 15 of the '082 Patent contains elements from other claims already discussed and adds the limitations that the first and second electrodes each have a central longitudinal axis extending toward the animal during use from the electrode base to an opposite distal end:

17
18
19

> [S]aid inside surface having at least one high point surface designed to intersect with a notional 90-degree plane extended from a point on at least one of said first central longitudinal axis and said second longitudinal axis . . . .

20

**Exh. 2** ( '082 Patent), Col. 14, lines 5-9.

21
22
23
24
25

As illustrated in **Illustration G**, above, Bonge discloses a notional 90-degree plane **<32>** extending from a point one the axis of either electrode **<24>** intersects the high point surfaces **<D>** and **<E>**.  Thus, each limitation of Claim 15 of the '082 Patent is disclosed by Bonge. Claim 15 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 19
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

As illustrated in **Illustration H**, above, Juliana discloses a notional 90-degree plane **<32>** or **<33>** extending from a point one the axis of either electrode **<24>** intersects one of the high point surfaces **<C>**, **<D>** and/or **<E>**.  Thus, each limitation of Claim 15 of the '082 Patent is disclosed in the Juliana Patent.  Claim 15 is also invalid under 35 U.S.C. §102 because it is anticipated by Juliana.

    **f.**  **Claim 17**

Claim 17 of the '082 Patent adds the requirements that the collar housing contain a stimulating unit and that the collar housing have an inside surface "designed for contacting the skin of the animal during use."  **Exh. 2** ('082 Patent), Col. 14, lines 17-38.

**Illustration G**, above, shows that Bonge defines an inside surface having two high point surfaces **<D>** and **<E>** which contact the skin of the animal during use.  Thus, each limitation of Claim 17 of the '082 Patent is disclosed in the Bonge Patent.  Claim 17 is invalid under 35 U.S.C. §102 because it is anticipated by Bonge.

Claim 17 is also invalid in view of Juliana.  As discussed above with respect to Claim 7 of the '014 Patent, the limitation that the collar housing contain a stimulation unit is inherent in the collar of Juliana.  *See* **Exh. 14** (Gerig Rep.), at 49-54; **Exh. 15** (Westrick Rep.), at 41-47.  In addition, Juliana clearly discloses the collar housing with an inside surface "designed for contacting the skin of the animal during use."  Thus, each limitation of Claim 17 of the '082 Patent is disclosed or inherent in the Juliana Patent.  Claim 17 is also invalid under 35 U.S.C. §102 because it is anticipated by Juliana.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

3.      **The claims of the '014 and '082 Patents are anticipated by various other prior art patents.**

As shown by Gerig and Westrick, several other U.S. Patents and prior art collars in addition to Bonge and Juliana anticipate the Asserted Claims. *See* **Exh. 14** (Gerig Rep.), at 6-9; **Exh. 15** (Westrick Rep.), at 8-11.   Limitation-by-limitation comparisons of these prior art references and Lalor's Asserted Claims are set forth in **Exhibit 16**.   The following summary of these prior art references illustrates where the asserted claims are anticipated.

- The Innotek Elite Receiver, publically disclosed in or before 1999, anticipates at least Claims 1, 4, 5, 7, 16, 17 and 18 of the '014 Patent and Claims 1, 3, 4, 6, 15 and 17 of the '082 Patent. *See* **Exh. 14** (Gerig Rep.), ¶¶ 22, 29 & App. B, I, & J; **Exh. 15** (Westrick Rep.), ¶¶ 29, 37 & App. B, I, & J.

- U.S. Patent No. Des. 376,553, which issued to Heun on December 17, 1996, anticipates at least Claims 1, 5, 7, 16, and 17 of the '014 Patent and Claims 1, 4, 6, 15 and 17 of the '082 Patent. *See* **Exh. 14** (Gerig Rep.), ¶¶ 18, 25 & App. B, E.

- U.S. Patent No. 5,815,077, which issued to Christiansen on September 29, 1998, anticipates at least Claims 1, 5, 16 and 17 of the '014 Patent and Claims 1, 4, 15 and 17 of the '082 Patent. *See* **Exh. 14** (Gerig Rep.), ¶¶ 20, 27 & App. B, G; **Exh. 15** (Westrick Rep.), ¶¶ 32, 40 & App. B.

- U.S. Patent No. 6,052,097, which issued to Duncan et al. on April 18, 2000, anticipates at least Claims 1, 5, 7, 16, and 17 of the '014 Patent and Claims 1, 4, 6, 15 and 17 of the '082 Patent. *See* **Exh. 14** (Gerig Rep.), ¶¶ 17, 24 & App. B, D; **Exh. 15** (Westrick Rep.), ¶¶ 31, 39 & App. B.

- U.S. Patent No. 6,712,025, which was published on May 2, 2002, and issued to Peterson et al. on March 30, 2004, anticipates at least Claims 1, 5, 7, 16, and 17 of the '014 Patent and Claims 1, 4, 6, 15 and 17 of the '082 Patent. *See* **Exh. 14** (Gerig Rep.), ¶¶ 19, 26 & App. B, F; **Exh. 15** (Westrick Rep.), ¶¶ 33, 41 & App. B.

4.      **Radio Systems and Innotek are entitled to summary judgment of invalidity.**

For the foregoing reasons, Radio Systems and Innotek are entitled to summary judgment of invalidity and entry of an injunction permanently enjoining Lalor and Bumper Boy from making further allegations or claims that Radio Systems or Innotek has infringed the '014 Patent

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

or the '082 Patent.

**B.**   **Three Accused Designs Do Not Infringe The '014 Patent Or The '082 Patents As A Matter Of Law.**

Radio Systems and Innotek are also entitled to partial summary judgment of non-infringement as to the designs of Collar #1, Collar #2, and the Innotek Field Pro® collar (the "Accused Products").[3]

Infringement analysis entails two steps.  First, the Court must determine the correct claim scope.  *See Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1247-48 (Fed. Cir. 1998).  Second, the trier of fact must compare the properly construed claim to the accused device to determine whether all claim limitations are present either literally or by a substantial equivalent. *See id*.   To establish literal infringement, all elements of the claim, as correctly construed, must be present in the accused system.  *See TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1371 (Fed. Cir. 2002); *Cole v. Kimberly-Clark Corp.*, 102 F.3d at 524, 532, (Fed. Cir. 1996).

The Court has already determined the claim scope.  *See* **Exh.12** (Doc. 39).  What remains is comparing the properly construed claims to the Accused Products to determine whether all claim limitations are present either literally or by substantial equivalent.  For present purposes, this second step of the infringement analysis will be limited to Lalor's asserted independent claims because "[d]ependant claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."  *See Wahpeton Canvas Co., v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989). The independent claims at issue are Claims 1, 16, and 17

---

[3]  Radio Systems and Innotek do not concede that the design of Collar #1 infringes; however, that design is not the subject of this Motion for Summary Judgment of non-infringement.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

of the '014 and Claims 1, 15 and 17 of the '082 Patent.

**1. The Accused Products do not infringe Claim 1 of the '014 Patent either literally or under the doctrine of equivalents.**

**a. Literal Infringement**

Claim 1 of the '014 Patent, as construed by this Court, requires an "inside surface having at least one high point surface extending above said electrode base and toward the animal during use." *See* **Exh. 1** ('014 Patent) & **Exh. 12** (Claim Construction Order). The Accused Products do not incorporate an "inside surface having at least one high point surface extending above said electrode base and toward the animal during use." Thus, the Accused Products do not literally infringe Claim 1 of the '014 Patent.

**Illustration I**, which depicts the SD-1825 collar (Collar #2), illustrates the point. In accordance with the Court's construction that the electrode base is a feature of the electrode and that the electrode is supported on the inside surface of the collar housing, the electrode bases are illustrated at



*Illustration I*

26 in **Illustration I**. The raised surfaces D and E do not extend above a plane 32 perpendicular to the longitudinal axis of the electrode if the measurement is taken from the point X at which the longitudinal axis of the electrode meets the inside surface of the collar housing. Accordingly, none of these collars would be viewed as having a "high point surface" as the Court construes Claim 1 of the '014 Patent.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

The same analysis applies to the design of GS-011 Collar (*i.e.*, Collar #3) in **Illustration J**, and the Innotek® FieldPro Collar in **Illustration K**.  With respect to both these, the raised surfaces D and E are located below a plane 32 perpendicular to the longitudinal axis of the electrode if the measurement is taken from the point X at which the longitudinal axis of the electrode meets the inside surface of the collar housing. Accordingly, neither the GS-011 Collar nor the Innotek® FieldPro Collar have a "high point surface," as the Court construes Claim 1 of the '014 Patent.



*Illustration J*



*Illustration K*

Because the Accused Products do not incorporate each and every limitation of Claim 1 of the '014 Patent, they do not literally infringe that Claim.

> **b.    Doctrine of Equivalents**

Certain structural claim language necessarily excludes equivalents.  *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998) (subject matter "specifically excluded" from coverage under doctrine of equivalents if its inclusion "inconsistent with claim language); *see also Asyst Techs., Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed. Cir.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

2005) ("To hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent.").

Here, Claim 1 of the '014 Patent requires "inside surface having at least one high point surface ***extending above*** said electrode base and toward the animal during use."  *See* **Exh. 1** ('014 Patent) (emphasis added).  Thus, the structural claim language of Claim 1 necessarily excludes any range of equivalents that does not require the high point surface to "extend above" the electrode base.  In particular, to hold that "below" the electrode base is the equivalent of "extending above" the electrode base would effectively read the "extending above" limitation out of Claim 1 of the '014 Patent.  Accordingly, there is no proper range of equivalents that will capture collars wherein there is no high point surface extending above the electrode base.

Moreover, the defense of ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or "ensnare," the prior art.  *Wilson Sporting Goods Co. v. Davis Geoffrey & Assoc.,* 904 F.2d 677, 683 (Fed. Cir. 1990), *overruled in part on other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 92 n.12 (1993).  As previously discussed in Plaintiffs' Response to Defendants' Opening Claim Construction Brief (Doc. 34) at p. 4, under the Court's construction, Claim 1 of the '014 Patent does not literally read on the collar of Figure 10 of the U.S. Patent No. 5,787,841, because no portion of the collar housing extends above the "electrode base" to create a "high point surface."  *See* **Exh. 18**, (U.S. Patent No. 5,787,841), Fig. 10.  If Claim 1 was permitted a range of equivalents that allowed a high point surface to be defined below the



**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

electrode base 26, the surfaces D and E would become "high point surfaces," as depicted in **Illustration L**.  Such a range of equivalents would improperly ensnare the collar of the '841 Patent.

For these reasons, the Accused Products do not infringe Claim 1 of the '014 Patent either literally or under the doctrine of equivalents.

### 2.    The Accused Products do not infringe Claim 16 of the '014 Patent either literally or under the doctrine of equivalents.

The Accused Products do not infringe Claim 16 of the '014 Patent.  Claim 16 includes a requirement that the high point surface "extend above" the electrode base as in Claim 1 of the '014 Patent.  As discussed above with respect to Claim 1, none of the Accused Products has a high point surface that extends above the electrode base.  Thus, they cannot infringe Claim 16 either literally or under the doctrine of equivalents.

### 3.    The Accused Products do not infringe Claim 17 of the '014 Patent either literally or under the doctrine of equivalents.

The Accused Products do not infringe Claim 17 of the '014 Patent.  Claim 17 requires "Said inside surface having at least one high point surface designed to intersect with a notional 90-degree plane extended from a point on said central longitudinal axis.  **Exh. 1** ('014 Patent), Claim 17.  As depicted in **Illustrations I, J and K**, above, the closest notional 90-degree plane to the inside surface of the collar housings is illustrated at 32, and such plane 32 does not intersect any high point surface defined by the collar housing of any of the three accused collars. Thus, the limitation is not literally present in any of the Accused Products.

With respect to the doctrine of equivalents, "not intersect" cannot be the equivalent of "intersect."  *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed.Cir.2005).  Moreover, a

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1   range of equivalents that would place the height of the high point surface below a notional plane

2   **32** at point **X** would ensnare the prior art, as discussed with respect to Claim 1 above.  *Wilson*

3   *Sporting Goods Co. v. Davis Geoffrey & Assoc.,* 904 F.2d 677, 683 (Fed. Cir. 1990).  Therefore,

4   the Accused Products do not infringe Claim 17 of the '014 Patent under the doctrine of

5   equivalents, either.

6        **4.     The Accused Products do not infringe Claim 1 of the '082 Patent either**
7               **literally or under the doctrine of equivalents.**

8        The Accused Products do not infringe Claim 1 of the '082 Patent.  As discussed above

9   with respect to Claim 1 of the '014 Patent, none of the Accused Products has a high point surface

10  that extends above either electrode base.  Thus, they cannot infringe Claim 1 of the '082 Patent

11  either literally or under the doctrine of equivalents.

12       **5.     The Accused Products do not infringe Claim 15 of the '082 Patent either**
13             **literally or under the doctrine of equivalents.**

14       The Accused Products do not infringe Claim 15 of the '082 Patent.  Claim 15 requires

15  "said inside surface having at least one high point surface designed to intersect with a notional

16  90-degree plane extended from a point on at least one of said first central longitudinal axis and

17  said second longitudinal axis."  **Exh. 2** ('082 Patent), Claim 15.  As in the case of Claim 17 of

18  the '014 Patent, the designs of the Accused Products do not meet this limitation, either literally

19  or by equivalents.

20       **6.     The Accused Products Do Not Infringe Claim 17 Of The '082 Patent Either**
21             **Literally or Under the Doctrine of Equivalents.**

22       The Accused Products do not infringe Claim 17 of the '082 Patent.  Claim 17 includes a

23  limitation requiring that the inside surface define at least one high point surface "extend above"

24  the electrode base of one of the electrodes.  As discussed above with respect to Claim 1 of the

25  '014 Patent, the designs of the Accused Products do not have a high point surface that extends

26

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1  above either electrode base.  Thus, they cannot infringe Claim 17 of the '082 Patent either

2  literally or under the doctrine of equivalents.

3  **C.  The Equitable Doctrines Of Laches and Estoppel Bar, Or At Least Limit, The**
4  **Claims Of Infringement.**

5  Radio Systems and Innotek are also entitled to summary judgment because Lalor's

6  infringement claim is barred, or at least limited, by the equitable doctrines of laches and estoppel.

7  **1.  Laches**

8  Laches applies to limit the alleged infringer's liability for infringement where the

9  patentee neglects or delays bringing suit to remedy an alleged wrong, and fairness requires that

10  the claims for damages be barred.  *Ultimax Cement Mfg. Corp., et al. v. CTS Cement Mfg. Corp.,*

11  *et al.*, 587 F.3d 1339, 1349 (Fed. Cir. 2009); *A.C. Aukerman Co.*, 960 F.2d at 1020.  Laches is

12  shown where (1) the patentee's delay in bringing suit was unreasonable and inexcusable, and (2)

13  the alleged infringer suffered material prejudice attributable to the delay.  *A.C. Aukerman Co.,*

14  *960* F.2d at 1032; *Adelberg Labs, Inc. v. Miles, Inc.*, 921 F.2d 1267, 1270 (Fed. Cir. 1990).  The

15  time of the delay is measured from when the patentee knew or in the exercise of reasonable

16  diligence should have known of the alleged infringement, to when the claim was finally asserted

17  in court.  *Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112, 118 (D. Mass. 1993), *aff'd w/o*

18  *opinion*, 26 F.3d 140 (Fed. Cir. 1994); *Adelberg Labs, Inc.*, 921 F.2d at 1270.

19  **a.  Lalor and Bumper Boy delayed bringing their claims for five and one-**
20  **half years.**

22  The first time Innotek knew or could have known about the alleged infringement

23  occurred when it received the cease and desist letter dated February 21, 2005, from counsel for

24  Lalor and Bumper Boy:

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 28
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

> We believe, and we have advised our clients, that your Ultrasmart collar is a clear infringement of our clients' exclusive rights afforded by the ['014 Patent]. . . . Our clients take this contravention of their intellectual property rights very seriously and are committed to aggressively protecting those rights whenever and where ever [sic] they are violated.

**Exh. 9** (February 21, 2005 letter).

This letter was not a polite invitation to discussion.  The letter clearly and unequivocally claimed infringement and demanded that Innotek pay a royalty or stop producing the product and destroy existing inventory.  The letter indisputably sets the date of Lalor's first knowledge of the alleged infringement, and thus the beginning period of laches, at February 21, 2005, at the latest.[4]

After Innotek responded to the cease and desist letter by showing that the patent was invalid, Lalor and Bumper Boy fell silent for years.  Despite the silence, Lalor admits that he never abandoned his intent to pursue his claims.  Indeed, he maintains that he was not concerned about the patent's invalidity.  *See* **Exh. 17** (Excerpts of Deposition of Lalor), at 128:10-20, 130:17-25, 131:1-9.  Lalor did not tell Innotek that he was pursuing a continuation application in an attempt to circumvent the invalidity problem, nor did he say that he intended to pursue his claim at a later date.  *See* **Exh. 5** (Waterhouse Decl.), ¶ 5.  Moreover, after the '082 Patent issued in September 2007, Lalor and Bumper Boy did not make any attempt to communicate with Innotek and Radio Systems for an additional *two years*.  **Exh. 11** (November 19, 2009 letter).

It is undisputed that five and one-half years elapsed before Lalor and Bumper Boy finally asserted their claims in court.  It is also undisputed that in the meantime, Innotek had no reason to believe that Lalor would pursue the claims.

---

[4]  The date of Lalor's actual knowledge was certainly earlier.  In addition, the '082 patent issued on September 11, 2007, two and one half years after Lalor and Bumper Boy's initial letter threatening suit.  The allegations of infringement as to this patent are identical to the claims asserted as to the '014 Patent.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 29
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

### b.      There is no reasonable explanation for the delay.

Lalor has offered only a slim excuse for his long delay: "We were doing a bunch of things," and his lawyer was in charge of patent issues.  *See* **Exh. 17** (Excerpts of Deposition of Lalor), at 130:4-10.  While there may be circumstances in which a delay may be excused, no such circumstances exist here.  *See A.C. Aukerman Co.*, 960 F.2d at 1033 (discussing excusable circumstances such as ongoing negotiations with accused infringer, disputes over ownership of patents, war or illness).  Lalor's explanation amounts to nothing other than acknowledgment that he sat on his rights, waited an unreasonable length of time while Radio Systems and Innotek materially changed their position before finally asserting his rights.

### c.      Radio Systems and Innotek were materially prejudiced by the delay.

Prejudice may be evidentiary, arising from the inability to present a full and fair defense due to loss of records, the death of a witness or the unreliability of memories, thereby undermining the court's ability to judge the facts.  *A.C. Aukerman Co.*, 960 F.2d at 1033.  Prejudice may also be shown by a change of economic position, such as making heavy capital investment and increasing production.  *Adelberg Labs, Inc.*, 921 F.2d at 1272; *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1550 (Fed. Cir. 1984).

Economic prejudice exists here.  During Lalor's lengthy period of silence, both Innotek and Radio Systems materially changed their position by entering into the stock purchase agreement and by continuing to sell the UltraSmart collar.  Both parties invested time and money conducting due diligence and negotiating the stock purchase agreement of Innotek.  **Exh. 5** (Waterhouse Aff.), ¶ 3.  Radio Systems, working with Innotek, further invested more time and its

---

As such, Lalor and Bumper Boy reasonably should have known of their alleged infringement claims as to the '082 Patent the same day that it issued.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

reputation in 2009, integrating the now-accused product into Radio Systems' popular sportDOG® line. **Exh. 6** (Vickery Aff.), ¶ 5. By placing its name on the now-accused product, Radio Systems unknowingly risked not only its investment, but also its goodwill. These investments were significant and occurred during a prolonged period of silence by Lalor and Bumper Boy after the initial vigorous threats of infringement. Lalor has not denied that he was aware of Innotek's and later Radio Systems' activities, and yet for unexplained reasons, he sat on his rights. *See* **Exh. 17** (Excerpts of Deposition of Lalor), at 130:24-25, 131:1-9.

Further, Radio Systems' expert, Duane Gerig, has opined that a simple design-around could have been implemented for each of the three accused designs at a cost of approximately $150,000.00. *See* **Exh. 14** (Gerig Rep.) at p. 13. Plaintiffs were deprived of the opportunity to evaluate the design-around option for the period of time during which Lalor sat on his rights. Under these circumstances, as a matter of law it is unfair and inequitable to hold Innotek and Radio Systems responsible for damages that accrued during the period of delay.

### 2.     Estoppel

Equitable estoppel applies where: (1) the patentee, through misleading conduct, leads the infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on the conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *Wafer Shave*, 857 F. Supp. at 118. A successful estoppel defense bars all of a patentee's infringement claims. *Id*.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 31
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### a.   Lalor And Bumper Boy's silence misled Radio Systems and Innotek.

This case falls within the *Aukerman* court's description of the most common estoppel situation, in which "the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." *A.C. Aukerman Co.*, 960 F.2d at 1042.  Lalor's silence became misleading when the threat of vigorous enforcement of his patent rights was followed by years of silence.  *See Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305 (Fed. Cir. 2010) (intentionally misleading silence arises when a patentee threatened immediate suit or vigorous enforcement of its patent rights but then did nothing for an unreasonably long time).

It is immaterial to the issue of estoppel that there were reasons for the delay if those reasons were not communicated to plaintiff.  *See Wafer Shave*, 857 F. Supp. at 118; *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1013 (7th. Cir. 1970) (fact that patentee did not suggest it was abandoning its claim of infringement was irrelevant; as at no time did it notify the alleged infringer that it was pressing its claim.).  Here, it is undisputed that Lalor and Bumper Boy harbored a secret intent to enforce the patent, and yet they failed to communicate at all with plaintiffs from just prior to April 25, 2005 until November 19, 2009, a period of four and one-half years.  In light of their earlier threats of vigorous enforcement, the silence was misleading.

### b.   Radio Systems and Innotek relied on the misleading silence and were materially harmed.

It is also undisputed that after Innotek presented a detailed invalidity analysis of the '014 Patent, Lalor and Bumper Boy remained silent for over four years.  Any reasonable person would conclude under these circumstances that the matter had been put to rest.  Indeed, Radio

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 32
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Systems knew nothing of the claims of infringement, until they were raised again in November 2009. **Exh. 5** (Waterhouse Decl.), ¶ 5.

In the manner explained above, Radio Systems and Innotek were materially harmed by Lalor and Bumper Boy's misleading silence. Whether or not Innotek and Radio Systems would have altered their business plans had they known of the defendants' intent to pursue their claims is not dispositive to the estoppel analysis; the relevant fact is that they were denied the opportunity to do so. *See Wafer Shave*, 857 F. Supp. at 125 ("Gillette lost the opportunity to limit its present exposure to substantial litigation costs and damages because it believed there was no longer a threat of litigation concerning the [patentee's] patent.")

It would be unfair and inequitable to allow the defendants to press claims that long ago could have been dealt with, before both plaintiffs materially changed their position. Under these undisputed facts, estoppel applies to bar completely the defendants' claims under both the '014 and the '082 Patents. Alternatively, the Court should conclude that Lalor and Bumper Boy have committed laches, and should be barred from obtaining damages for their claims during the period of time from February 21, 2005 through August 27, 2010.

## VI.   <u>CONCLUSION</u>.

For the foregoing reasons, Radio Systems and Innotek are entitled to a summary judgment that the '014 Patent and the '082 Patents are invalid. In the alternative, Radio Systems and Innotek are entitled to a partial summary judgment that the Accused Products do not infringe either the '014 or the '082 Patents. In the alternative, Radio Systems and Innotek are entitled to a summary judgment of no liability based on the equitable doctrines of laches and estoppel. Further, Radio Systems and Innotek are entitled to the entry of an injunction permanently

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1  enjoining Lalor and Bumber Boy from making further allegations or claims that they have
2  infringed the '014 or the '082 Patents.

3      DATED this 2nd day of September, 2011.

4
5                                    s/R. Bradford Brittian
                                     R. Bradford Brittian, Tennessee Bar No. 007130
6                                    John T. Winemiller, Tennessee Bar No. 021084
                                     Matthew J. Stark, Tennessee Bar No. 029737
7                                    **MERCHANT & GOULD P.C.**
                                     110 Tyson Boulevard, Suite 203
8                                    Alcoa, TN 37701-4111
                                     Tel  865-380-5960
9                                    Fax 865-380-5999
                                     bbrittian@merchantgould.com
10                                   jwinemiller@merchatgould.com
                                     mstark@merchantgould.com
11

12                                   s/Regina V. Culbert
13                                   Regina V. Culbert, Washington Bar No. 30213
                                     **MERCHANT & GOULD P.C.**
14                                   4750 Columbia Center
                                     701 Fifth Avenue
15                                   Seattle, WA 98104
                                     Tel  206-342-6200
16                                   Fax 206-342-6201
17                                   rculbert@merchantgould.com

18

19                                   s/  Duncan C. Turner
                                     Duncan C. Turner, WSBA # 20597
20                                   **BADGLEY MULLINS LAW GROUP, PLLC**
                                     4750 Columbia Center
21                                   701 Fifth Avenue
                                     Seattle, Washington, 98104
22                                   Telephone:  (206) 621-6566
                                     Facsimile:   (206) 621-9686
23                                   duncanturner@badgleymullins.com

24
25
26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 34
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
Law Group PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Philip P. Mann
Mann Law Group
1218 Third Ave., Suite 1809
Seattle, WA 98101
Tel: 206-436-0900
Fax: 866-341-5140
phil@mannlawgroup.com
**Attorneys for Defendants**

John Whitaker
Whitaker Law Group
1218 Third Avenue, Suite 1809
Seattle, WA 98101
206-436-8500
john@wlawgrp.com
**Attorney for Defendants**

s/ Duncan C. Turner_____
Duncan C. Turner, WSBA # 20597
BADGLEY~MULLINS LAW GROUP
4750 Columbia Center
701 Fifth Avenue
Seattle, Washington, 98104
Telephone: (206) 621-6566
Facsimile: (206) 621-9686
Email: duncanturner@badgleymullins.com

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 35
Case No. 2:10-cv-00828 RSL

BADGLEY ~ MULLINS
Law Group PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686