The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

RADIO SYSTEMS CORPORATION and
INNOTEK, INC.,

           Plaintiffs,

           vs.

TOM LALOR, individually, and BUMPER
BOY, INC.,
           Defendants.

Case No. 2:10-cv-00828 RSL

**PLAINTIFFS' MOTIONS IN LIMINE**

NOTE ON MOTION CALENDAR:
November 18, 2011

## I.     INTRODUCTION

     Plaintiffs Radio Systems Corporation ("Radio Systems") and Innotek, Inc., ("Innotek")

(collectively "Plaintiffs") hereby move *in limine* as follows:

## II.     MOTION TO EXCLUDE THE TESTIMONY OF MARK R. HENNINGS

     The Court should exclude the testimony of Mr. Hennings about Plaintiffs' alleged

infringement or as to any other topic at trial.  Mr. Hennings is not qualified under Rule 702 of the

Federal Rules of Evidence to provide scientific, technical, or other specialized knowledge that

will assist the trier of fact to understand the evidence or to determine any fact in issue.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

A.      **Background**

U.S. Patent No. 6,830,014 ("'014 Patent"), **Exhibit A[1]** and U.S. Patent No. 7,267,082 ("'082 Patent"), **Exhibit B**, at issue relate to animal collars of the type having one or more electrodes that protrude from the inside surface of the collar for contacting the neck of the animal. Id. Only Claims 1, 4, 5, 7, 16, 17 and 18 of the '014 Patent, and Claims 1, 3, 4 6, 15 and 17 of the '082 Patent are at issue. **Exhibit A and B**. Although the claims at issue require the animal collar to include one or more electrodes, and in some claims a receiver and stimulating unit, the claims at issue are directed primarily at the configuration of the collar housing. There is no requirement in the claims at issue for specific electronic circuitry.

The Defendants have submitted the EXPERT REPORT OF MARK R. HENNINGS, J.D., M.E.S., B.S., REG. PATENT ATTY (hereinafter the "HENNINGS REPORT"), **Exhibit C**, and have identified Mr. Hennings as an expert witness at trial. As set forth in the HENNINGS REPORT, at 1-2, and in his curriculum vitae attached thereto, Mr. Hennings' undergraduate degree was in general biology, and he did not work in the biological sciences thereafter. HENNINGS DEPO., at 18, ll. 2-10, **Exhibit D**. After college, until about 1998, Mr. Hennings' education and employment focused on computer science and digital electronics. HENNINGS REPORT, p. 1–2, CURRICULUM VITAE, **Exhibit C**. He obtained a law degree in 2000, and became a practicing patent attorney primarily drafting and prosecuting patent applications in the field of computer science. Id. Mr. Hennings has alleged his computer science and digital electronics background is of some relevance to the issues before this Court; however, he has conceded that an in-depth understanding of digital electronics is not necessary for an understanding of the technology in

---

[1] References to Exhibits in this Section I shall be to the exhibits attached to the Declaration of Bradford R. Brittian.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

this case.  For example, he testified that it is sufficient for purpose of the infringement analysis herein to determine that a system for generating a stimulus is present.  H ENNINGS DEPO., at 18, line 1, to 21, line 3, **Exhibit D**.  Moreover, none of Mr. Hennings' education or work experience is directly related to the field of animal training collars.  Id. at 21, line 11, to 23, line 13.

Mr. Hennings' only direct involvement with electronic animal training collars, or animal training, resulted from his wife's dog breeding "hobby" and his father's ownership of a bark collar.  H ENNINGS DEPO., at 16, line 25, to 17, line 3, & 23, line 14, to 26, line 10, **Exhibit D**. Approximately eight years ago his wife owned two remote trainers, and his father had a bark collar that he saw when he took care of his father's dog.  Id.   His dog training experience is limited to teaching basic commands and obedience in connection with his wife's hobby.  Id.

### B.   Argument

#### 1. In order to testify as to the issue of infringement Mr. Hennings must qualify as an expert in the pertinent art.

Judges perform a "gatekeeping role" to ensure that expert testimony admitted into evidence is both reliable and relevant. Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1360 (Fed. Cir. 2008); see also Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993); Fed. R. Evid. 702.  There is no special rule as to experts in patent cases, and patent cases are also governed by Rule 702. Sundance, 550 F.3d at 1360.   Further, the '[a]dmission of expert testimony is within the discretion of the trial court." Acoustical Design, Inc. v. Control Elecs. Co., 932 F.2d 939, 942 (Fed. Cir. 1991).

In the present case, Mr. Hennings seeks to opine as to the issue of infringement. Infringement is an issue, however, that is analyzed from the perspective of a person of ordinary skill in the art. Sundance, 550 F.3d at 1363.  Mr. Hennings acknowledged this rule in his Report,

PLAINTIFFS' MOTION IN LIMINE - 3
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
L AW G ROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1   stating that "I understand that an infringement analysis, comparing the patent claims to the

2   accused device, is conducted from the view point of a person having ordinary skill in the art at

3   the time of the invention; the art, in this case, includes the field of animal training collars."

4   HENNINGS REPORT, p. 3, **Exhibit C**.   It follows from this rule that one who is <u>not</u> of ordinary

5   skill in the art is unqualified to offer expert testimony on the issue of infringement.   Indeed,

6   allowing such a person to offer testimony would be an abuse of discretion:

> We hold that it is an abuse of discretion to permit a witness to testify as an expert
> on the issues of noninfringement or invalidity unless that witness is qualified as
> an expert in the pertinent art. Testimony proffered by a witness lacking the
> relevant technical expertise fails the standard of admissibility under Fed. R. Evid.
> 702. Indeed, where an issue calls for consideration of evidence from the
> perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to
> allow a witness to testify on the issue who is not qualified as a technical expert **in
> that art**. We understand that patent lawyers are often qualified to testify as
> technical experts, but such a qualification must derive from a lawyer's technical
> qualifications in the pertinent art.

14  <u>Sundance</u>, 550 F.3d at 1363 (emphasis added).   In <u>Sundance</u>, the proposed expert was a patent

15  attorney, like Mr. Hennings.   His general knowledge was, however, irrelevant.   On the contrary,

16  the court concluded his non-expert testimony would only "confuse" and "cause mischief":

17  "[a]dmitting testimony from a person… with no skill in the pertinent art, serves only to cause

18  mischief and confuse the factfinder."   <u>Id</u>. at 1362.   Thus, in <u>Sundance</u>, as here, "[u]nless a patent

19  lawyer is also a qualified technical expert, his testimony on these kinds of technical issues is

20  improper and thus inadmissible."   <u>Id</u>.   Accordingly, Defendants must establish that Mr. Hennings

21  is qualified as an expert in the pertinent art.   As noted above, Mr. Hennings opines that the

22  pertinent art "includes the field of animal training collars."   HENNINGS REPORT, p. 3, **Exhibit C**.

23  Mr. Hennings, has no such expert knowledge.

24

25

26

PLAINTIFFS' MOTION IN LIMINE - 4
Case No. 2:10-cv-00828 RSL

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

### 2.  Mr. Hennings is not qualified as an expert in the field of animal training collars.

Regarding who would qualify as an expert in the "field of animal training collars," it is instructive to look at the level of ordinary skill in that the art.  In the HENNINGS REPORT, Mr. Hennings defines one of ordinary skill in the art as one with non-specific mechanical and/or electrical knowledge, but he does go so far as to totally exclude a requirement for knowledge of the animal training collar technology or the animal training collar industry.  Significantly, in trying to include himself as one of ordinary skill Mr. Hennings excluded Mr. Lalor, the inventor of the patents-in-suit, from his definition, and in acknowledging that at least some relevant knowledge of the industry is necessary he excluded himself from his own definition.   Mr. Hennings define one of ordinary skill in the art as follows:

> In this case, the person would be mechanically inclined and have a background in packaging for packaging portable electric circuits and the needs of that industry. This person of skill would likely have an undergraduate degree in an engineering field such as Mechanical and/or Electrical Engineering.  Such a degree indicates knowledge and application of the basic laws of physics.  This hypothetical person would also have worked in the design-, manufacturing-, and/or service-related areas for several years, and would understand the operation, maintenance and servicing issues of various forms of packaging portable electronic circuits.  This person would also be aware of previous animal training devices, including previous animal training collars, and market forces driving the developments in the animal training collars, and would understand the basics of principles and operation of electronic circuits and the physiological effects of the animal training collar upon the animal wearing the collar.   This person would be adept in structural design.

HENNINGS REPORT, pp. 3-4, **Exhibit C**.  The requirement for a degree in mechanical or electrical engineering would describe Mr. Hennings, but not Mr. Lalor, who has no such degrees.  It is unlikely with his background that Mr. Lalor had at the time of the invention any significant expertise in portable electronic circuits.  LALOR DEPO., at 6, line 22, to 7, line 20, **Exhibit E**. Accordingly, although one would think the inventor would be indicative of one skilled in the art,

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Mr. Hennings' definition does not describe the inventor of the patents-in-suit. With respect to knowledge specific to the field of animal training collars, neither his wife's ownership of two remote trainers approximately eight years ago (likely after the date of invention in this case), nor his babysitting a dog with a bark collar would give Mr. Hennings any expertise regarding "previous animal training devices, including previous animal training collars, and market forces driving the developments in the animal training collars." And, Mr. Hennings' teaching of basic commands in connection with his wife's dog breeding hobby would have hardly given him any expertise in "the physiological effects of the animal training collar upon the animal wearing the collar." Thus, whereas Plaintiffs' disagree with Mr. Hennings' definition of one of ordinary skill in the art, it is instructive that Mr. Hennings does not meet his own criteria.

One of Plaintiffs' expert witnesses, Mr. Michael Westrick, opined that one of ordinary skill in the relevant art relating to the patents-in-suit would have "between three and five years of experience in the electronic dog collar field, including experience designing electronic animal collars." EXPERT REPORT OF MICHAEL DAVID WESTRICK PURSUANT TO FED.R.CIV.P. 26(a)(2)(B), p. 11, attached in part as **Exhibit F**. Another of Plaintiff's expert witnesses, Mr. Duane Gerig, echoed this conclusion. EXPERT REPORT OF DUANE A. GERIG PURSUANT TO FED.R.CIV.P. 26(a)(2)(B), p. 9, attached in part as **Exhibit G**. Under this definition of one of ordinary skill in the art Mr. Hennings would fall woefully short. He clearly does not qualify as an expert in the field of animal training collars under any definition.

### 3. Prior to opining on infringement Mr. Hennings made no effort to make himself aware of the state of the art at the time of the invention.

This is not merely a case where Mr. Hennings does not qualify by training or experience as an expert in the field of animal training collars. It is also a situation where Mr. Hennings has

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1   made no effort to educate himself as to the technology at the time of the invention, and

2   Defendants' counsel has made no effort to assist him in that regard.

3       Mr. Hennings acknowledged that an infringement analysis is conducted from the view

4   point of a person having ordinary skill in the art at the time of the invention, which necessarily

5   requires one to have an understanding of the state of the art at the time of the invention.

6   HENNINGS REPORT, p. 3, **Exhibit C**.  However, Mr. Hennings reviewed only two of the twenty-

7   four patents cited by the examiner during the prosecution of the patents-in-suit.  HENNINGS

8   DEPO., at 30, line 16, to 33, line 4; 37, line 10, to 38, line 6; 87, line 3, to 91, line 3, **Exhibit D**.

9   He stated that he conducted a patent search for prior art patents, but he used a database that

10  would not allow him to see the drawing of the patents being reviewed.  Id. at 33, line 5-10; 34,

11  line 13, to 37, line 9; 87, ll. 15-18.  Thus, he would not have been able to view patent drawings

12  which would have shown the configuration of the collar housing of the prior art patents.  Id.

13  Such a search would have been meaningless given the technology at issue in this litigation.

14      What is particularly disturbing in this case is that Defendants' counsel made no effort to

15  assist Mr. Hennings to understand the state of the art at the time of the invention.  Throughout

16  this litigation numerous prior art references have been cited, including numerous references cited

17  in PLAINTIFFS' PRELIMINARY INVALIDITY CONTENTIONS, served on November 9, 2010, and

18  numerous prior art references cited in the claim construction briefs filed last spring.  These

19  references include U.S. Patent No. 5,872,516 to Bonge, U.S. Patent No. Des. 330,173 to Juliana

20  et al., and other references that are the focus of Plaintiffs' pending motion for summary

21  judgment.  Although access to such references would not have made up for his basic lack of

22  expertise in the animal training collar field, it would have at least given Mr. Hennings some idea

23  of the technology at the time of the alleged invention.  However, Mr. Hennings testified in his

PLAINTIFFS' MOTION IN LIMINE - 7
Case No. 2:10-cv-00828 RSL

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1    deposition on October 14, 2011, that he had not seen these very significant references.

2    HENNINGS DEPO., at 46, line 18, to 47, line 6; 53, ll. 16-24; 55, ll. 5-20; 96, line 23, to 98, line 7;

3    103, line 24, to 106, line 7; 114, line 23, to 117, line 12; 121, ll. 6-12, **Exhibit D**.   Indeed, Mr.

4    Hennings testified as follows:

5         Q.      You opined in your report, did you not, that one skilled in the art
6    would know the state of the art at the time of the invention; is that correct?
                              * * * *
7         THE WITNESS:  Can you read that question to me, please, again. (Last
     question read.)
8
9         A.      (Witness reviews document.)  No, I stated the - - I stated that the
     infringement analysis is conducted from the viewpoint of a person having
10   ordinary skill in the art.

11        Q.      At the time of the invention?

12        A.      At the time of the invention, right.

13        Q.      Would that not suggest that one of ordinary skill in the art needs to
14   know what the art was at the time?

15        A.      Not necessarily, but yes.

16        Q.      Yet, you reviewed two prior art references.

17        A.      Mm-hum.

18        Q.      Were you aware that your attorneys or Mr. Lalor's attorneys were
19   in possession of every reference that we have used in this deposition today?

20        A.      I was not aware of that.

21        Q.      Okay.  Yet none of these references were seen by you when you
22   did your report?  I think you testified that the Farkas - -

23        A.      Right.  Yeah, the Farkas and I believe there is one other I looked
     at, the ones that the patent examiner thought were most relevant.
24
25        Q.      Okay.  So you looked at two references and all the others that we
     have talked about today were in the possession of Mr. Lalor's counsel?
26

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1

MR. WHITAKER:  Objection.  Speculation.

2

A.      I don't know that, but - - that they were in possession of the.  I
have seen indications today that at least some of them were, so… (Pause.)

3

* * * *

Q.      Well, would it be your testimony then that you could testify from

4

the view point of one of ordinary skill in the art at the time of the invention

5

without knowing what the level of – not knowing the technology at the time?

6

THE WITNESS: Read the question to me, please. (last question read.)

7

A.      No.

8

HENNINGS DEPO., 136, line 19, to 139, line 19, **Exhibit D**.  Given his lack of expertise in the art,

9

one would think Mr. Hennings would have made some meaningful effort to enlighten himself as

10

to the state of the art before submitting his opinions by way of a report.  One would also have

11

think Lalor's counsel would have assisted in this regard.  However, neither effort was made.

12

The Federal Circuit has stated that "[a]llowing a patent law expert without any technical

13

14

expertise to testify on the issues of infringement and validity amounts to nothing more than

15

advocacy from the witness stand."  Sundance, 550 F.3d at 1365-66.  At the time of the alleged

16

inventions of the patents-in-suit, Mr. Hennings was a patent attorney writing and prosecuting

17

computer related patent applications.  He has no experience in the animal training collar industry,

18

and his personal experience with training collars are no more than the average training collar

19

owner.  Moreover, he made no meaningful effort to educate himself regarding the technology at

20

the time of the alleged invention. Mr. Hennings is not one of ordinary skill in the art, and he is

21

22

not qualified to give expert testimony regarding infringement or validity issues in this case.

23

Allowing him to testify would allow advocacy from the witness stand.

24

25

26

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III.      MOTION TO EXCLUDE THE TESTIMONY OF SCOTT CRAGUN.

The Court should also exclude the opinion of Scott Cragun. "[A]n expert's testimony shall be limited in substance to what he considered in his opening report.  Thereafter, the expert cannot fix its deficiencies."  Luke v. Family Care & Urgent Med. Clinics, 323 Fed. Appx. 496 (9th Cir. 2009); Cooper Tire & Rubber Co. v. Farese, 2008 U.S. Dist. LEXIS 96729 (N.D. Miss. Nov. 26, 2008); Keytrack, Inc. v. Key Register LLC, No. C-03-00870 WHA, 2004 WL 2944043, at *3 (N.D. Cal. Mar. 30, 2004).  Mr. Cragun's opinion does not meet the required standards set forth in either Rule 702 or Rule 26(a)(2)(B)(i) and he cannot rehabilitate himself at trial.

#### A.  Mr. Cragun's Opinion is Unsupported, Improper, and Flawed, and it Would Not Be Helpful to the Jury.

##### 1.  Mr. Cragun did not adequately state the basis of his opinion.

Mr. Cragun's testimony should be excluded because he failed to state the basis and reasons for his opinion in his expert report as required by Rule 26.  Although he purports to analyze the facts under the factors set forth in Georgia Pacific Corp. v. United Plywood Corp., 318 F. Supp. 1116 (S.N.D.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir. 1971), he offers only a recitation of alleged facts, coupled with conclusory statements that he has "considered" the facts in arriving at his opinion.  *See e.g.* Culbert Decl. II, Exh. A (Cragun Report at 12, 14, 16, 18-20) [2].  There is nothing in Mr. Cragun's opinion that adequately explains how his royalty rate was derived.  As a result, and because his opinions would be confined to the content of his

---

[2]  The report is attached as Exhibit A to the Declaration of Regina V. Culbert in support of Motion to File Under Seal (Culbert Decl. II).  Because Mr. Cragun's report and deposition discusses confidential financial and licensing information from Radio Systems and Innotek, it has been designated "Attorneys Eyes Only."  Accordingly, this Motion will discuss the issues generically, without reference to specific numbers.  Plaintiffs are seeking leave of Court to file Mr. Cragun's report and portions of his deposition testimony under seal, pursuant to Local Rule 5(g).

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1    expert report, any testimony he would offer at trial would also be superficial and vague.  Thus

2    his testimony should be excluded under both Rule 702 and Rule 37(C)(1).

3              **2.  Mr. Cragun's opinion improperly compares multi-component systems.**

4              The patentee bears the burden of proving damages, and those damages must at all times

5    relate to the economic harm caused by the alleged infringement.  Lucent Techs., Inc. v. Gateway,

6    Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009).  "To prevent the hypothetical [negotiation] from

7    lapsing into pure speculation" sound economic proof of the nature of the market and the likely

8    outcomes with infringement factored out of the economic picture is required.  ResQNet.com, Inc.

9    v. Lansa, Inc., 594 F.3d 860, 868-69 (Fed. Cir. 2010).  The trial court must ensure that proof of

10   damages is carefully tied to the claimed invention's footprint in the market place.  Id. at 869.

11             Mr. Cragun purports to compare the profitability of the accused products with non-

12   accused products, in order to determine the portion of profit associated with the technology of

13   the Lalor patents.  Cragun Report at 14-15, 19-20.  Rather than properly limiting his analysis to

14   the accused collars, however, Mr. Cragun assessed multi-component pet containment and remote

15   training *systems* containing other products.  *See e.g.* Cragun Report at 13-14.

16             Mr. Cragun's reliance on system prices for purposes of determining a reasonable royalty

17   for a collar patent is inappropriate.  Uniloc USA, Inc. v. Microsoft, 632 F.3d 1292, 1318 (Fed.

18   Cir. 2011) (patentee must separate portion of profit and patentee's damages between patented

19   feature and unpatented features; such evidence must be reliable and not speculative).  Mr.

20   Cragun admitted that he made no effort to separate the profit from the collars contained in the

21   systems.  Cragun Dep. at p. 73, 74[3].  There is no evidence that the demand for the accused

22

23

24

25   _____

26   [3]  Portions of Mr. Cragun's deposition testimony are attached as Exhibit B to Culbert Decl. II.

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1
2
3

remote training devices and pet containment systems was driven by the purported improvements embodied in the Lalor patents.  <u>See</u> Cragun Dep. at p. 83.  This portion of Mr. Cragun's analysis is faulty and renders his report unreliable.

4
5

### 3.  Mr. Cragun's opinion compares the prices of accused and non-accused product pairs that are not proper to compare.

6
7
8
9
10
11
12
13
14
15

Mr. Cragun also purports to compare the prices and profitability of accused products versus non-accused products, purporting to opine on whether consumers pay a premium for the technology provided by the Lalor patents.  Cragun Report at 19-20.  However, with one exception, the non-accused products he compares to the accused products have many other features that have nothing to do with the Lalor patents.  Mr. Cragun even admitted at deposition that he did not have the proper cost data to do an appropriate comparison, and that because of the differences in the products, his product pairs were "not an adequate comparison."  *See* Cragun Dep. at 69-70, 74-78.  Mr. Cragun has not updated, supplemented or corrected his report.  His use of an improper analysis renders his opinion unreliable.

16

### 4.  Mr. Cragun relies on license agreements that do not relate to the technology in the patents at issue.

17
18
19
20
21
22

Mr. Cragun's opinion is also unreliable because he bases it on the royalty rates reflected in license agreements that do not relate to the patents at issue in this case.  In this regard, it would be error to admit his testimony.  <u>ResQNet</u>, 594 F.3d at 871 (<u>quoting</u> <u>Lucent v. Microsoft</u>, 580 F.3d at 1328 ).  This is because the analysis will not reflect the patented invention's footprint in the marketplace and instead reflects royalties paid for totally different products.  *See id*. at 869.

23
24
25
26

In his report, Mr. Cragun purports to acknowledge the differences in the license agreements, but he never explains why they are relevant.  Cragun Report at 12.  He even admitted that six out of the eight licenses he relied upon were "less comparable" to the Lalor

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1  patents at issue.  Cragun Dep at 61,64-65, 66.  This kind of analysis that was soundly rejected as
2  "speculative and unreliable" by the Federal Circuit in <u>ResQNet</u>.  <u>See</u> 594 F.3d at 871.

3              **5.  Mr. Cragun relies on website prices instead of actual dollars received.**

4              Mr. Cragun's opinion is unreliable because of the way he calculates Defendants' alleged
5  profits from the sale of accused products.  Instead of relying on actual dollars received, he used
6  prices quoted from Defendants' website.  *See e.g.* Cragun Report at 19.  As Plaintiffs' expert will
7  show, this inflates the alleged profit by a factor of two.  The result is that Mr. Cragun's opinion is
8  not tied to the patents' actual footprint in the marketplace.  Thus, his opinion is unreliable.

9          **D.     Mr. Cragun's Opinion is Misleading.**

10             **1.   Mr. Cragun misleadingly implies that there is a customary (large) royalty
11                    paid for the technology at issue**.

12             Mr. Cragun misleadling implies in his report that there is a customary (large) royalty paid
13  for the technology at issue.  He does this by mentioning a license unrelated to the patented
14  technology that provided for an up-front payment of $1 million dollars to the patentee.  He does
15  this notwithstanding his conclusion that he is not aware of any customary royalty rates for the
16  patented technology.  Cragun Report at 18.  This improper advocacy is misleading.

17      **E.  Mr Cragun Should Be Precluded From Testifying That He Did Not Receive
18  Documents Until it was Too Late to Include An Analysis of Them in his Report.**

19             Mr. Cragun excused his flawed analysis by noting that he did not receive the appropriate
20  documents. Cragun Dep. at p. 68.  Defendants did not ask Plaintiffs to provide the information he
21  mentioned, and Culbert Decl. at Exh. 5 (discovery requests directed to "Animal Collars" defined
22  as the accused products only, not all products), and  Mr. Cragun had the opportunity to submit a
23  rebuttal or supplemental report but did not.  Similarly, Mr. Cragun testified that he did not

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1   receive a relevant license agreement until it was too late, but the cause of the delay was not due

2   to Plaintiffs.  *See* Culbert Decl. at ¶7 (explaining facts).

### IV.   MOTION TO LIMIT TESTIMONY FROM MR. LALOR.

4           The Court should limit the testimony of Mr. Lalor to factual matters.  Mr. Lalor neither

5   disclosed himself as an expert witness pursuant to Rule 26(a)(2)(A), nor provided a written

6   report or disclosure pursuant to Rules 26(a)(2)(B)-(C).  Further, by his own admission, he is not

7   qualified to give expert testimony in this matter.

9           The Rules clearly require the exclusion of undisclosed expert testimony: "If a party fails

10  to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

11  allowed to use that information or witness to supply evidence  . . . at a trial, unless the failure was

12  substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Neither exception to this Rule is

13  applicable here. Mr. Lalor clearly took the position that he was "not an expert" with respect to

14  the patents-in-suit.  It would be manifestly unjust to allow him to testify as an expert now.

16          Further, as stated above, Rule 702 allows expert testimony only where the witness is

17  "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid.

18  702.  The objective of this Rule is "to ensure the reliability and relevancy of expert testimony,"

19  whether it comes from "professional studies or personal experience."  *Kumho Tire Co., Ltd. v.

20  Carmichael*, 526 U.S. 137, 152 (1999).  Nothing in the record even remotely suggests that Mr.

21  Lalor satisfies the Rule 702 factors. He has no training or educational background that would

22  enable him to testify as an expert based on professional studies, and he lacks any particular

23  knowledge or skill that would qualify him based on personal experience.  He is an ideas man

24  who turned over his conception to others to reduce to practice.  To the point: He testified that he

PLAINTIFFS' MOTION IN LIMINE - 14
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1  lacks relevant or reliable knowledge on the very subjects about which he professed to have

2  discoverable information in his Initial Disclosures.

3      Mr. Lalor proposes calling himself to testify about "the contents and scope" of the

4  patents-in-suit, as well as about "the dog training collar industry" and "the operations and

5  business dealings of those engaged in the industry."  *See* Defendants' Pretrial Statement, at 4-5

6  (excerpt attached as Exhibit 1 to the Declaration of Regina V. Culbert ("Culbert Decl.")).  Mr.

7  Lalor similarly identified himself on his Initial Disclosures as an individual likely to have

8  discoverable information about "the terminology used in the '014 and '082 Patents and . . . the

9  construction of such terminology by those skilled in the art."  *See* Defendant/Counter-Claim

10  Plaintiff's Initial Disclosures, at 2 (emphasis added) (excerpt attached at Culbert Decl., Exh. 2.)

11      Yet at his deposition, Mr. Lalor testified that he had knowledge only of the premise of the

12  patents-in-suit, but that he was "not an expert" with respect to the patents' contents and scope:

13

14      • *"I'm not an expert* at the patent claims.  The only thing I understand is basically,
          you know, the premise of the collar and how it works on the dog . . . ."
15          Deposition of Thomas M. Lalor ("Lalor Dep."), at 26 (excerpts attached at
           Culbert Decl., Exh. 3) (emphasis added).
16

17      • "You know, you're asking me to go through what's been written here and *I'm not
          an expert* at how this all goes together with all the things in it."  *Id.* at 79
18        (emphasis added).

19      • *"I'm not an expert* of defining what surfaces and the minutia of these things."  *Id.*
          at 80 (emphasis added).
20

21      Mr. Lalor repeatedly emphasized that he relied on his patent attorney to translate his

22  conception into claims, "I just explained to the patent lawyer how it worked.  He devised the

23  claims in accordance and I think it's quite explained in it [sic].  I don't think I can explain it any

24  better.  That's what I hired him to do."  *Id.* at 77.  He also testified, "I just know how the unit

25  works.  I don't know the definition of it.  That's what I gave the patent lawyer to do is to define

26

PLAINTIFFS' MOTION IN LIMINE - 15
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

it." *Id.* at 89.  And, in fact, his counsel stated, "[H]e is not here as an expert in interpretation of patent claims and so forth."  Lalor Dep., at 25.  At most, therefore, Mr. Lalor may be competent to testifying about his conception of the invention described or claim in the '014 and '082 Patents; however, he is not competent to testify about the content and scope of the patents.

Mr. Lalor is not competent to testify about the terminology used in the '014 and '082 Patents, much less the construction of such terminology by those skilled in the art.  For example, he admitted that he did not understand the term "electrode base" or its construction:

> Q:      So you don't understand what the electrode base is?
>
> A:      Not in the way that may be explained in here [referring to the '014 Patent].

*Id.* at 79; *see also id.* at 85 ("I don't know what electrode base means unless I look at the definition of it.").  Likewise, he could not identify where the high-point surfaces were without first studying the patents:

> Q:      Referring to the same figure, where would the high-point surfaces be?
>
> A:      Well, again, I have to read how it's – the context of high-point surfaces.  I haven't read this in seven years.

*Id.* at 86.

Mr. Lalor's lack of understanding of the terminology used in his own patents, let alone the scope and content of those patents, is remarkable.  Given his lack of knowledge, coupled with his failure to comply with Rule 26(a)(2) and his lack of qualifications under Rule 702 and *Daubert*, the Court should limit his testimony to factual matters.

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

**V.      MOTION TO PRECLUDE TESTIMONY FROM NUNN, XIONG AND ROBINS**

Mr. Lalor proposes calling Dennis Robins ("Mr. Robins") and Murry Nunn ("Mr. Nunn") to testify solely about "Mr. Lalor's conception, design and development of the inventions claimed in the '014 and '082 Patents." Defendants' Pretrial Statement, at 6 (excerpt attached at Culbert Dec., Exh. 1). Mr. Lalor failed to identify either Mr. Robins or Mr. Nunn in response to Radio Systems' Interrogatory No. 1, which asked him not only to identify "all persons involved in any way with the conception, development, design, and/or actual reduction to practice of the alleged inventions described and claimed in the patents-in-suit," but also to "describe the role of each such person." Defendants' Responses to Plaintiff Innotek, Inc.'s First Set of Interrogatories to Mr. Lalor, No. 1 (excerpt attached at Culbert Decl., Exh. 2). Having failed to identify either man in response to this interrogatory and, more consequentially, having failed to describe either man's role in the conception, development, design, or reduction to practice of the alleged inventions, Mr. Lalor should not now be allowed to rely on Mr. Robins' or Mr. Nunn's testimony for the very same purpose.

Mr. Lalor proposes calling and Mr. Robins and Kenneth Xiong ("Mr. Xiong") to testify about "the dog training collar industry and . . . "the operations and business dealings of those engaged in the industry," and he proposes calling Mr. Xiong to testify about "the terminology used in the '014 and '082 Patents and . . . the construction of such terminology by those skilled in the art." Defendants' Pretrial Statement, at 6 (excerpt attached at Culbert Decl., Exh. 1). Because the identified topics involve technical and specialized knowledge beyond the ken of the ordinary person, such testimony would constitute expert testimony under Rule 702. Yet Mr. Lalor has neither disclosed Mr. Robins and Mr. Xiong as expert witnesses, nor provided Radio Systems with expert reports stating their opinions and the facts or data he considered in forming

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1  such opinions, as required by Rule 26(a)(2).  Mr. Robins and Mr. Xiong should, therefore, be

2  precluded from testifying as experts on any topic, pursuant to Rule 37(c)(1).

3                              **V.       CONCLUSION**

4          For the reasons stated above, Plaintiff respectfully requests that its motions be granted.  A

5  proposed order is attached to this motion.

6          DATED this 7th day of November, 2011.

7

8                                    s/John T. Winemiller
                                     R. Bradford Brittian, Tennessee Bar No. 007130
9                                    John T. Winemiller, Tennessee Bar No. 021084
                                     **MERCHANT & GOULD P.C.**
10                                   110 Tyson Boulevard, Suite 203
                                     Alcoa, TN 37701-4111
11                                   Telephone: (865) 380-5960
                                     Facsimile:  (865) 380-5999
12                                   bbrittian@merchantgould.com
                                     jwinemiller@merchatgould.com
13

14                                   Regina V. Culbert, Washington Bar No. 30213
                                     **MERCHANT & GOULD P.C.**
15                                   701 Fifth Avenue, Suite 4100
                                     Seattle, WA  98104
16                                   Telephone:  206-342-6200
                                     Facsimile:  206-342-6201
17                                   rculbert@merchantgould.com

18                                   Duncan C. Turner, WSBA # 20597
19                                   **BADGLEY MULLINS LAW GROUP, PLLC**
                                     4750 Columbia Center
20                                   701 Fifth Avenue
                                     Seattle, Washington, 98104
21                                   Telephone:  (206) 621-6566
                                     Facsimile:  (206) 621-9686
22                                   duncanturner@badgleymullins.com

23

24                                   ***Attorneys for the Plaintiff***
                                     ***Radio Systems Corporation***

25

26

PLAINTIFFS' MOTION IN LIMINE - 18
Case No. 2:10-cv-00828 RSL

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1

2

## CERTIFICATE OF SERVICE

3

       I hereby certify under penalty of perjury that on November 7, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

4

5

Philip P. Mann
Mann Law Group
1218 Third Ave., Suite 1809
Seattle, WA 98101
Tel: 206-436-0900
Fax: 866-341-5140
phil@mannlawgroup.com
**Attorneys for Defendants**

6

7

8

9

10

John Whitaker
Whitaker Law Group
1218 Third Avenue, Suite 1809
Seattle, WA 98101
206-436-8500
john@wlawgrp.com
**Attorney for Defendants**

11

12

13

14

15

                s/Duncan C. Turner

16

                Duncan C. Turner, WSBA # 20597
BADGLEY~MULLINS LAW GROUP
4750 Columbia Center
701 Fifth Avenue
Seattle, Washington, 98104
Telephone:  (206) 621-6566
Facsimile:  (206) 621-9686
Email:  duncanturner@badgleymullins.com

17

18

19

20

21

22

23

24

25

26

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686