UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

---

RADIO SYSTEMS CORPORATION and
INNOTEK, INC.,

           Plaintiffs,
    v.

TOM LALOR, individually, and BUMPER
BOY, INC.,

           Defendants.

No. C10-828RSL

ORDER GRANTING
PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

---

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (Dkt. # 53). Plaintiffs contend they are entitled to judgment as a matter of law in this patent non-infringement action for three reasons: (1) the relevant claims in Defendants' patents are invalid; (2) three of Plaintiffs' four designs are non-infringing; and, (3) the equitable doctrines of estoppel and laches bar any liability. The Court agrees that Plaintiffs' three designs are non-infringing and that equitable estoppel applies. Accordingly, the Court GRANTS the motion.

## I. BACKGROUND

This suit centers around the validity and the scope of two United States patents, Numbers 6,830,014 (the '014 Patent) and 7,267,082 (the '082 Patent). Complaint (Dkt. # 1) at ¶ 5. As alleged, Defendant Tom Lalor and his company, Defendant Bumper Boy, hold both. Each patent concerns improvements in the field of electronic animal control collars, i.e., collars that deliver an electronic shock to an animal to discourage certain behaviors. See Complaint: Exhibit A (Dkt. # 1-2) (the '014 Patent); Complaint: Exhibit B (Dkt. # 1-3) (the '082 Patent).

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 1

As described in the '014 Patent, Lalor sought to improve over prior art that concentrated "90% of the collar tensioning load . . . on the tiny electrodes, which jab into the animal's neck," causing "animal discomfort" and injury. Complaint: Exhibit A (Dkt. # 1-2) at 10 (the '014 Patent) (internal cross-reference omitted). To eliminate that shortcoming, Lalor designed a collar that included "high point surfaces" on the inside of the collar to "relieve and distribute the load caused by collar tension around the animal's neck over a larger contact friction area." Id. at 12. This patent was filed on August 5, 2003. Id. at 10.

The '082 Patent improved on the '014 Patent primarily by specifying that at least one of these "high point surfaces" had to be located outside of the "central area" between the two electrode bases. Complaint: Exhibit B (Dkt. # 1-3) at 16 (the '082 Patent). It was filed on December 30, 2005. Id. at 2.

Plaintiffs are also no strangers to the field of electronic animal collars. In or about 1997, Plaintiff Innotek produced an electronic collar called the "Elite Receiver." In 2001, it acquired Invisible Fence, another electronic collar designer and manufacturer. Dkt. # 55. Innotek produced its UltraSmart collar in 2004, its FieldPro collar in 2005, and its GS-011 collar in 2006. Id. In 2006, Plaintiff Radio Systems acquired Innotek's parent company via a stock purchase. Radio systems subsequently incorporated many of Innotek's designs into its own product lines, releasing its SD-1825 and PetSafe Venture lines in 2009. Mot. (Dkt. # 53) at 5. As alleged, the SD-1825 line incorporated the design of Innotek's GS-011 collar. Id. The PetSafe line was based on Innotek's UltraSmart collar design. Id.

These collars form the substance of the parties' dispute. In a letter dated November 19, 2009, Defendants accused Plaintiffs of infringing upon both the '014 and '082 Patents with their UltraSmart and SD-1825 collar designs. Complaint: Exhibit E (Dkt. # 1-6). This was not the first such letter that Plaintiffs had received. Defendants had sent Innotek a letter on February 21, 2005, claiming that Innotek's UltraSmart collar infringed Defendant's '014 Patent and

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 2

demanding that Innotek either enter into a royalty agreement with Defendants or cease production of the collar and destroy its existing inventory. Complaint: Exhibit C (Dkt. # 1-4). Innotek responded in a letter dated April 29, 2005. It informed Defendants that it had evidence of prior art that would invalidate the relevant claims of the '014 Patent. Complaint: Exhibit D (Dkt. # 1-5). The letter also noted that Defendants had an obligation to disclose prior art to the U.S. Patent Office and that their failure to disclose Innotek's product and other prior art could constitute inequitable conduct. Id. The letter concluded with an explanation that Innotek would prefer that the parties simply "put this matter to rest," but that it was "willing to take a more aggressive approach if need." Id. Defendants never responded.

In fact, Plaintiffs heard nothing from Defendants until they received the 2009 letter. Nonetheless, Plaintiff Radio Systems responded to the 2009 letter. It informed Lalor that it had purchased Innotek and was thus in possession of evidence that would invalidate Defendants' patent claims. Lalor Decl. (Dkt. # 57-2) at 2. After the parties unsuccessfully attempted to resolve the dispute "without lawyers," Plaintiffs filed suit on May 23, 2010, seeking a declaratory judgment that Defendants' patents are "invalid, unenforceable, and/or not infringed by Radio Systems and Innotek." Defendants responded by expanding the scope of their infringement claim, asserting infringement by nine of Plaintiffs' products. Culbert Decl.: Exhibit 8 (Dkt. # 56-1) at 57 (Lalor's Preliminary Infringement Contentions).

## II. DISCUSSION

This suit concerns Defendants' assertion that Plaintiffs' products[1] infringe Claims 1, 4, 5, 7, 16, 17, and 18 of their '014 Patent and Claims 1, 3, 4, 6, 15, and 17 of their '082 Patent. As stated, Plaintiffs dispute this assertion. They argue (1) that Defendants' patents are invalid, (2)

---

[1] The nine allegedly infringing products are based on four designs: the UltraSmart collar design, the GS-011 collar design, the FieldPro collar design, and the SD-1825 collar design. See Culbert Decl.: Exhibit 8 (Dkt. # 56-1) at 54 (Lalor's Preliminary Infringement Contentions); Mot. (Dkt. # 53) at 23–24. Accordingly, the Court confines its discussion to those four basic designs.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 3

that their products are non-infringing, and (3) that equity bars Defendants' claim.

Notably, the Court may grant Plaintiffs' motion for summary judgment only if the movant establishes that there is no genuine issue of material fact and that judgment is therefore appropriate as a matter of law. Fed. R. Civ. P. 56(c). As the moving party, Plaintiffs have the initial burden of informing the Court of the basis for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). They must prove each and every element of its claim or defense such that "no reasonable jury could find otherwise." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). Only once the movant makes the required initial showing does the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because a genuine fact issue exists. See Celotex, 477 U.S. at 324.

To be material, the fact must be one that bears on the outcome of the case. A genuine issue exists only if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Id. at 249–50. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).

With these standards in mind, the Court turns to each of Plaintiffs' three contentions.

**A. Invalidity**

Plaintiffs argue first that Defendants' claim of infringement is invalid because each of the individual patent claims on which Defendants rely are anticipated by prior art, specifically United States Design Patent Number 330,173 (the '173 Patent) and United States Patent Number

5,872,516 (the '516 Patent).[2]

"Anticipation under 35 U.S.C. § 102 requires the disclosure in a single piece of prior art of each and every limitation of a claimed invention." Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000) (citing Electro Med. Sys. S.A. v. Cooper Life Sciences, 34 F.3d 1048, 1052 (Fed. Cir. 1994). "Whether such art is anticipating is a question of fact." Id. (citing Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991). However, as patents are presumed valid, 35 U.S.C. § 282, the party claiming invalidity must demonstrate that "invalidity by facts supported by clear and convincing evidence." Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 725 (Fed. Cir. 2002).

**1. Validity of the '014 Patent Claims**

Plaintiffs have not carried their burden of establishing that the relevant claims of the '014 Patent are each anticipated by prior art.

As previously described, the primary innovation of the '014 design was the incorporation of raised "high point surfaces" on the inside of the collar. This limitation is most pointedly reflected in Claims 4, 17, and 18, which provide:

> 4. The animal collar according to claim 1, wherein said at least one electrode has a distal end opposite said electrode base and extending toward the animal during use, and <u>wherein said distal end is no more than 3/8 inch (0.95 cm) closer to the animal during use than said at least one high point surface</u>.
>
> 17. An animal collar designed for attachment to an animal comprising:
>
> A collar housing having an inside surface designed for contacting the skin of the animal during use; and

---

[2] Plaintiffs also generally assert that Defendants' claims were anticipated by a host of other products and patents. The Court has considered each of these exhibits and agrees that at least one, the Innotek Elite receiver, demonstrates some similarity to the invention claimed in the '014 Patent. Cf. Culbert Decl.: Exhibit 14 (Dkt. ## 56-3, 56-4, 56-5) (Appendices I, J). However, given the lack of any focused argument or discussion by Plaintiffs—and the ambiguity of their expert's statements regarding the 3/8 measurements, id. (Dkt. # 56-1) at 185, 196–97—the Court cannot <u>currently</u> conclude that any of these patents or products provides clear and convincing evidence of invalidity.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 5

> At least one electrode intersecting said inside surface at electrode base, said at least one electrode having a central longitudinal axis extending toward the animal during use from said electrode base to an opposite distal end;
> Said inside surface having at least one <u>high point surface designed to intersect with a notional 90-degree plane extended from a point on said central longitudinal axis</u>.
>
>     18. The animal collar according to claim 17, <u>wherein said point on said central longitudinal axis is located less than 3/8 inch (0.95 cm) from said distal end of said at least one electrode</u>.

Dkt. 1–2 at 10 (the '014 Patent) (emphasis added).

Neither the '173 Patent nor the '516 Patent disclose "each and every" one of these claimed limitations. Apple, 234 F.3d at 20. The '173 Patent claims only an "ornamental design for a combined signal receiver and buckle and clamp unit for an animal collar." Culbert Declaration: Exhibits 1–13 (Dkt. # 56-1) at 33–36. It provides no further written specifications and no other information aside from five drawings of the claimed design. Id. Plaintiffs rely entirely upon one of these drawings, Figure 3, to support their point. More specifically, they rely entirely upon measurements of that drawing to argue that the '173 Patent anticipates Defendants' invention. Compare id., with Mot. (Dkt. # 53) at 9. The Court cannot agree.

Regardless of what the drawing may appear to depict, "it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." Nystrom v. TREX Co., Inc., 424 F.3d 1136, 1149 (Fed. Cir. 2005) (Hockerson-Halberstadt, Inc. v. Avia Group Intern., Inc., 222 F.3d 951, 956 (Fed. Cir. 2000)). Thus, "[a]bsent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little value." Avia, 222 F.3d at 956) (quoting In re Wright, 569 F.2d 1124, 1127 (C.C.P.A. 1977)). Because the '173 Patent provides no basis for calculating the invention's proportions, the measurements obtained from the drawing cannot serve as clear and convincing evidence of invalidity.

This same shortcoming dooms Plaintiffs' reliance on the '516 Patent. Again, Plaintiffs' argument finds no support in the written claims or in the inventor's description of his invention. Instead, Plaintiffs continue to rely entirely upon "arguments based on measurement of a [single] drawing," Figure 13. Compare Avia, 222 F.3d at 956, with Mot. (Dkt. # 53) at 9. Because there is no indication anywhere in the written specifications that this drawing is even "to scale," let alone tethered to "precise proportions," "particular sizes," or "quantitative values," it cannot support Plaintiffs' invalidity argument. Nystrom, 424 F.3d at 1149; Avia, 222 F.3d at 956.

### 2. Validity of the '082 Patent Claims

Plaintiffs also rely on their measurements of the drawings in the '173 and '516 patents to argue that the claims in Defendants' '082 Patent are anticipated and therefore invalid. For the reasons discussed, these drawings are incapable of supporting Plaintiffs' anticipation argument.

## B. Non-Infringement

Plaintiffs argue next that three of their accused products, the Innotek GS-011 collar, the FieldPro collar, and the SD-1825 collar, are non-infringing as a matter of law.

"An infringement analysis entails two steps: (1) the claims must be construed; and (2) the properly construed claims must be compared to the allegedly infringing device." General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997). The Court has already undertaken the legal task of construing the claims at issue. Order (Dkt. # 39). Accordingly, the Court now considers whether any reasonable trier of fact could conclude that Plaintiffs' three collars literally infringed Defendant's patents. See Mills, 103 F.3d at 981. The Court also considers whether any of these collars could be considered infringing under the doctrine of equivalents. See id. at 984.

### 1.   Literal Infringement

"Literal infringement requires that every limitation of the patent claim be found in the accused infringing device." General Mills, 103 F.3d at 981. Typically, it "is a question of fact." Id. However, where, as here, "the parties do not dispute any relevant facts regarding the accused

product, in this case the physical characteristics of [Plaintiffs' collars], but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." Id. at 983; accord Athletic Alts., Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996).

To be sure, neither party disputes the fact that each of the independent claims at issue, Claims 1, 16, and 17 of the '014 Patent[3] and Claims 1, 15, and 17 of the '082 Patent,[4] limit

---

[3] The '014 claims provide:
1. An animal collar designed for attachment to an animal comprising:
   a collar housing having an inside surface directed toward the animal during use; and
   at least one electrode intersecting said inside surface at an electrode base and extending toward the animal during use;
   said inside surface having at least one high point surface extending above said electrode base and toward the animal during use.
16. An animal collar designed for attachment to an animal having a stimulating unit for generating a stimulus, and one or more electrodes for transferring the stimulus to the animal, the collar comprising:
   a collar housing for containing the stimulating unit;
   said collar housing having an inside surface designed for contacting the skin of the animal during use, each of the one or more electrodes intersecting said inside surface at an electrode base and extending toward the animal during use;
   said inside surface having at least one high point surface extending above said electrode base and toward the animal during use.
17. An animal collar designed for attachment to an animal comprising:
   A collar housing having an inside surface designed for contacting the skin of the animal during use; and
   At least one electrode intersecting said inside surface at electrode base, said at least one electrode having a central longitudinal axis extending toward the animal during use from said electrode base to an opposite distal end;
   Said inside surface having at least one high point surface designed to intersect with a notional 90-degree plane extended from a point on said central longitudinal axis.

[4] The '082 claims provide:
1. An animal collar designed for attachment to an animal, comprising:
   a collar housing having an inside surface directed toward the animal during use;

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 8

    a first electrode directed toward the animal during use, said first electrode
      intersecting said inside surface at a first electrode base; and
    a second electrode directed toward the animal during use, said second electrode
      intersecting said inside surface at a second electrode base;
    said inside surface having at least one high point surface extending above at
      least one of said first electrode base and said second electrode base and
      toward the animal during use;
    said at least one high point surface located outside of a central area of said
      housing, said central area located between said first electrode base and said
      second electrode base.
  15. An animal collar designed for attachment to an animal, comprising:
    a collar housing having an inside surface designed for contacting the
      skin of the animal during use;
    a first electrode directed toward the animal during use, said first
      electrode intersecting said inside surface at a first electrode base,
      said first electrode base having a central longitudinal axis extending
      toward the animal during use from said first electrode base to an
      opposite first distal end; and
    a second electrode directed toward the animal during use, said second
      electrode intersecting said inside surface at a second electrode base,
      said second electrode base having a central longitudinal axis
      extending toward the animal during use from said second electrode
      base to an opposite second distal end;
    said inside surface having at least one high point surface designed to
      intersect with a notional 90-degree plane extended from a point on
      at least one of said first said central longitudinal axis and said
      second longitudinal axis;
    said at least one high point surface located outside of a central area of
      said housing, said central area located between said first electrode
      base and said second electrode base.
  17. An animal collar designed for attachment to an animal, the collar
having a stimulating unit for generating a stimulus and first and second electrodes
directed toward the animal during use for transferring the stimulus to the animal,
the collar comprising:
    a collar housing for containing the stimulating unit and for supporting
      the electrodes, said collar housing having an inside surface designed
      for contacting the skin of the animal during use, the first electrode
      intersecting said inside surface at a first electrode base, and the
      second electrode intersecting said inside surface at a second
      electrode base;
    said inside surface having at least one high point surface extending
      above at least one of said first electrode base and said second

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 9

Defendants' invention to a product with at least one high point surface extending above at least one electrode base. Cf. Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed; hence Wahpeton's zeal for a determination of infringement of claims dependent on independent claims 14 and 21 is necessarily doomed by its failure to obtain the determination of infringement of those independent claims."). Nor is there any dispute as to the physical characteristics of Plaintiffs' collars. For example, Defendants do not contend that Plaintiffs base their arguments on deformed or abnormal collars. Nor do they fault Plaintiffs' measurements of their collars.

Rather, the parties simply disagree as to what constitutes the "electrode base" on each of the allegedly infringing collars—a question that, as General Mills notes, is a matter of claims interpretation that can readily be resolved as a matter of law. 103 F.3d at 981; Athletic Alts., 73 F.3d at 1578. Because a picture truly is worth a thousand words, the Court uses the attached

/
/
/
/
/
/

---

electrode base and toward the animal during use;
said at least one high point surface located outside of a central area of said housing, said central area located between said first electrode base and said second electrode base.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 10

photograph of Plaintiffs' SD-1825 collar to better illustrate the substance of the parties' dispute.[5] Plaintiffs' argue that the Court's claim construction dictates that the "electrode base" of each electrode is located at the points marked "X"—points that extend above the "high point surfaces," marked "D" and "E."[6] Motion (Dkt. # 53) at 23–24. Defendants disagree. They argue that the Court's claim construction dictates that the "electrode base" of each electrode is located at the points marked "Y"—points below those "high point surfaces."

Accordingly, to resolve this dispute over claim interpretation, the Court need only turn to its prior construction of the terms. See General Mills, 103 F.3d at 981. There, the Court construed "electrode base" as "the portion of the electrode where it intersects the inside surface of the collar housing." Order (Dkt. # 39) at 9. It construed "electrode" to mean "a structure through which a stimulus is transmitted" and "inside surface" as the "portion of the collar housing facing inwards toward[] the animal." Id. at 7–8. And it construed "collar housing" as "a fully enclosed case supporting the electrode(s) and covering components of the animal

---

[5]



[6] Again, Defendants do not dispute Plaintiffs' representations regarding its measurements. Accordingly, the Court accepts them as true. See Celotex, 477 U.S. at 324.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 11

collar." Id. at 7. These constructions support Plaintiffs' position.

As the attached picture of the SD-1825 collar demonstrates, the portions of the collar that falls between points X and Y are part of the fully enclosed case supporting the electrodes and covering components of the animal collar. They thus form part of the "collar housing," specifically that part facing inward toward the animal, i.e., the "inside surface." In addition, it is evident from the picture that the "structure"—in this case what appears to be a threaded post—intersects the inside surface of the collar housing at point X. Accordingly, the "electrode base" of each electrode is located at the points marked "X"—points that extend above the "high point surfaces," marked "D" and "E." The SD-1825 is therefore non-infringing.

As this same analysis applies with equal force to the GS-011 and FieldPro collars, the Court also finds each to be non-infringing under the doctrine of literal infringement.

**2. Infringement under the Doctrine of Equivalents**

"The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, where the differences between the claimed product and the accused product are insubstantial." General Mills, 103 F.3d at 984; accord Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). The primary question is one of "equivalence," an objective inquiry that must be made on an element-by-element basis. Warner-Jenkinson Co., 520 U.S. at 40. "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." Id. at 24 (quoting Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950)).

The Court notes that a determination of infringement under the doctrine of equivalents constitutes a finding of fact. Thus, in the summary judgment context, the burden is on the patent holder to demonstrate infringement by "submit[ting] evidence tending to show equivalence with respect to limitations not literally met by the accused infringing device." General Mills, 103 F.3d at 984. Defendants have wholly failed to satisfy that burden.

Rather than contesting Plaintiffs' assertion that they did not infringe under the doctrine of

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 12

equivalents, Defendants argue only in favor of literal infringement. More importantly, Defendants proffer no "material evidence designed to establish equivalence with respect to" the limitations of the '014 or '082 patents. Id.; accord Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1353 (Fed. Cir. 2001) ("The party opposing the [summary judgment] motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." (quoting Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)). Accordingly, Plaintiffs are entitled to summary judgment on this issue.

* * *

In sum, the Court concludes that Plaintiffs are entitled to judgment as a matter of law on their contention that their GS-011, FieldPro, and SD-1825 collar designs do not literally infringe Defendants' patents. Moreover, Defendants present no evidence to rebut Plaintiffs' assertion that their products were non-infringing under the doctrine of equivalents and raise no alternative arguments to demonstrate infringement. The Court therefore GRANTS Plaintiffs' motion with respect to each of these products.

## C. Equitable Estoppel and Laches

Finally, Plaintiffs argue that the doctrines of equitable estoppel or laches precludes any liability that might remain. The Court agrees. Defendants are equitably estopped from pursuing their claim that Plaintiffs' UltraSmart collar design infringes their '014 Patent.[7]

An equitable estoppel defense "has three important elements." First, "by statements or

---

[7] Defendants' contention that its two patents must be treated distinctly is well taken. See, e.g., Meyers v. Asics Corp., 974 F.2d 1304, 1307, 1309 (Fed. Cir. 1992). Unfortunately for Defendants, however, the Court has already determined that three of the four allegedly infringing designs do not infringe Plaintiffs' patents. Thus, only the UltraSmart collar design remains at issue, and Defendants do not dispute that its production and release pre-dated the filing of the '082 Patent. Accordingly, the UltraSmart design could not have infringed the '082 Patent, and the Court need only consider whether Defendants are estopped from claiming infringement on the basis of the '014 Patent.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 13

conduct," "the patentee . . . must 'communicate something in a misleading way.'" <u>A.C. Aukerman Co. v. R.L. Chaides Const. Co.</u>, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (en banc).  As noted in <u>Aukerman</u>, "[t]he 'something' with which this case, as well as the vast majority of equitable estoppel cases in the patent field is concerned, is that the accused infringer will not be disturbed by the . . . patentee in the activities in which the former is currently engaged."  <u>Id.</u> ("<u>In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years</u>. (emphasis added)).  However, the element is met so long as the patentee's conduct "supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer."  <u>Id.</u>

Second, the "accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action."  <u>Id.</u> at 1042–43.  "Reliance is not the same as prejudice or harm, although frequently confused."  <u>Id.</u> at 1043.  "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security . . . ."  <u>Id.</u>

And third, "the accused infringer must establish that it would be materially prejudiced if the patentee is now permitted to proceed."  <u>Id.</u>  In evaluating whether economic, or business, prejudice has occurred, courts must "look for a <u>change</u> in the economic position of the alleged infringer during the period of the delay."  <u>Id.</u> at 1033 (emphasis in original).  "Prejudice may be shown by a change of economic position flowing from actions taken or not taken by the patentee."  <u>Aspex Eyewear Inc. v. Clariti Eyewear, Inc.</u>, 605 F.3d 1305, 1312–13 (Fed. Cir. 2010); <u>ABB Robotics, Inc. v. GMFanuc Robotics Corp.</u>, 52 F.3d 1062, 1065 (Fed. Cir. 1995).

Applying these standards to the uncontested facts at hand, the Court concludes that no genuine issue of material fact exists and that both Plaintiffs are entitled to judgment as a matter of law.  In reaching this conclusion, the Court recognizes that Innotek did not become a wholly owned subsidiary of Radio Systems until 2006.  Accordingly, the Court considers first whether Plaintiff Innotek can rely on the equitable estoppel doctrine and then explains why Radio

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 14

Systems is entitled to rely on Innotek's right to invoke the doctrine.

First, Defendants unquestionably misled Innotek through their 2005 letter and subsequent inaction. Cf. Aukerman, 960 F.2d at 1042. Defendants' attorney contacted Innotek in February 2005, asserting that Plaintiff's UltraSmart collar infringed Defendants' '014 Patent. Complaint: Exhibit C (Dkt. # 1-4). His letter demanded that Innotek either enter into a royalty agreement with Defendants or cease production of the collar and destroy any inventory it had. Id.

Innotek responded shortly thereafter, informing Defendants in an extremely detailed letter that it had evidence of prior art that would invalidate the relevant claims of the '014 Patent. Complaint: Exhibit D (Dkt. # 1-5). The letter concluded with an explanation that Innotek would prefer that the parties simply "put this matter to rest," but that it was "willing to take a more aggressive approach if need." Id. Innotek's letter was met with deafening silence. Defendants never responded and took no action against Innotek to vindicate their claim. Rather, they sat on their hands until November 19, 2009, when they sent a cease-and-desist letter to Radio Systems alleging infringement of the '014 and '082 patents. This course of conduct is the very archetype of a "misleading communication." Aukerman, 960 F.2d at 1042; cf. id. at 1044 ("In view of the Aukerman/Chaides correspondence, Chaides was in a position to infer, following Chaides' reply stating any infringement problem was Gomaco's, that by remaining silent Aukerman abandoned its claim against Chaides."); Wafer Shave, Inc. v. Gillette Co., 857 F. Supp. 112, 119 (D. Mass. 1993) (concluding that Gillette's allegation "that Wafer Shave explicitly threatened suit in its 1985 letters and then remained silent with respect to any claim of infringement for a period of years, while Gillette continued to develop, advertise, and sell its allegedly infringing products," fell squarely "within the Aukerman court's description of 'the most common [estoppel] situation,' in which 'the patentee specifically objects to the activities currently asserted as

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 15

infringement in the suit and then does not follow up for years'").[8]

In reaching this conclusion, the Court recognizes that Defendants contend that Lalor never intended to abandon his claim against Innotek—that he was simply "busy pursuing . . . the '082 patent."[9] Opp. (Dkt. # 58) at 21. His actions and intent are ultimately "immaterial to the issue of estoppel," however, because they "were not communicated to [Innotek] or otherwise known by it." Gillete, 857 F. Supp. at 121 ("It would not have been onerous for Mrs. Jennings and her associates to convey to Gillette their continuing intention to seek to enforce the Jennings patent; a simple statement to this effect on a postcard probably would have sufficed." (citation omitted)); accord Aukerman, 960 F.2d at 1044 ("Aukerman argues that the delay is excused by reason of litigation against others, even though Chaides was not informed of the litigation. However, that argument is off the mark. <u>A party must generally notify an accused infringer about other litigation for it to impact the defense of equitable estoppel</u>." (emphasis added)).

The Court also recognizes Defendants' argument that the delay in this case, roughly four-and-a-half years, does not in and of itself trigger any presumption. Though Defendants are in fact correct—that no presumption applies in cases of delays of less than six years—this contention confuses the issues of estoppel and laches. Aukerman, 960 F.2d at 1041–42. As Aukerman makes clear, laches requires the passage of an unreasonable amount of time,

---

[8] Defendants' reliance on Meyers is misplaced. See Opp. (Dkt. # 58) at 21. Unlike the contacts in Meyers, Defendants' 2005 contact with Innotek "threatens litigation." Compare Complaint: Exhibit C (Dkt. # 1-4) ("Our clients take this contravention of their intellectual property rights very seriously and are committed to aggressively protecting those rights whenever and wherever they are violated."), with Meyers, 974 F.2d at 1309. And its subsequent inaction conveyed the impression that Defendants would acquiesce to Innotek's continued production of its allegedly infringing designs. Compare Complaint: Exhibit D (Dkt. # 1-5), with Meyers, 974 F.2d at 1309 ("Moreover, the record shows that Meyers' initial communications with ATC were not followed by silence. Instead, several letters passed between Meyers and ATC between November 1983 and January 1985. These calls and letters do not rise to the level of a threat of litigation which would make a subsequent period of silence misleading.").

[9] The Court would note that Defendants argue predominately against Plaintiffs' laches claim, only mentioning estoppel in passing. See Opp. (Dkt. # 58) at 19–22. Nevertheless, the Court considers Defendants' arguments to the extent they have any bearing on Plaintiffs' estoppel claim.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 16

"equitable estoppel does not." Id. ("Unlike laches, equitable estoppel does not require the passage of an unreasonable period of time in filing suit."). Because the Court is presently concerned only with the issue of estoppel, Defendants' "[d]elay in filing suit" serves only as "evidence which influences the assessment of whether the patentee's conduct is misleading." Id. at 1042. And the Court thinks that Defendants' four-and-a-half year delay is more than enough to mislead Innotek into thinking that Lalor was no longer pursuing his claim. Cf. Gillete, 857 F. Supp. at 121 (finding estoppel in case of three-year-and-five-month delay).

Second, Innotek unquestionably "relied on the misleading conduct of the [Defendants] in connection with taking some action." Aukerman, 960 F.2d at 1042–43. Plaintiffs support that contention by pointing to the fact of the acquisition of Innotek by Radio Systems in 2006 and the ongoing expansion of their product line—products which Defendants claim infringe the '014 Patent. Motion (Dkt. # 53) at 4–5. In retort, Defendants argue only that it is conceivable that Plaintiffs relied not on Plaintiffs' inaction, but on their own belief that Defendants' '014 Patent was invalid. Response (Dkt. # 57) at 22. The Court fails to see a distinction. As Gillete notes, "[t]he fact that [the alleged infringer] may have relied in part on [its attorney's] advice does not negate the fact that it also relied on the patentee's apparent abandonment of [its] infringement claim." 857 F. Supp. at 123. At the very least, Defendants reinforced Innotek's opinion through their inaction. See MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1573 (Fed. Cir. 1989); Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 479 (7th Cir. 1975) (concluding that alleged infringer relied on patentee's misleading conduct despite the fact that the infringer had also informed patentee that infringer's internal investigation had indicated that there was no infringement). Accordingly, no reasonable fact finder could conclude that Innotek did not rely on Defendants' inaction.

Finally, the Court reaches the issue of prejudice. As Plaintiffs assert, during the period of silence, Radio Systems obtained an interest in Innotek, and both Plaintiffs continued to expand their product line, releasing the SD-1825 in March 2009 and the PetSafe Venture Series in April

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 17

2009. Each of these investments constitutes economic prejudice. Chubb Integrated Sys., Inc. v. Nat'l Bank of Wash., 658 F. Supp. 1043, 1049 (D.D.C. 1987) (holding that substantial business investment supported finding of business prejudice); Lemelson v. Carolina Enters., Inc., 541 F. Supp. 645, 657 (S.D.N.Y. 1982) (holding that investment in new product constituted "change of position" to support finding of prejudice); Advanced Hydraulics, 525 F.2d at 481 (concluding that expansion of business is evidence of detrimental reliance and prejudice). Plaintiffs also contend that Defendants' silence robbed them of the opportunity to structure their business plans as they might have had they known of the threat of litigation. This too is a recognized example of prejudice. Cf. Gillete, 857 F. Supp. at 125 ("Gillette lost the opportunity to limit its present exposure to substantial litigation costs and damages because it believed there was no longer a threat of litigation concerning the Jennings patent."). Accordingly, a reasonable fact finder could find only that Plaintiffs suffered prejudice.

      Having concluded that Innotek may invoke equitable estoppel to bar Defendants' claims, the Court sees no reason why Plaintiff Radio Systems cannot do the same. See Pension Benefits Guar. Corp. v. Ouimet Corp., 711 F.2d 1085, 1090 (1st Cir. 1983); see also Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 150 F.3d 1374, 1379 (Fed. Cir. 1998). Certainly, Defendants do not dispute that Innotek has, since 2006, been a wholly owned subsidiary of Radio Systems or that Radio Systems purchased Innotek with an eye toward incorporating Innotek's designs and technologies into its own product lines. Neither do Defendants dispute that Innotek and Radio Systems are headed by the same individual or that Radio Systems, as demonstrated by its subsequent incorporation of Innotek's designs, exerts substantial control over its subsidiary. Accordingly, this case strongly resembles the circumstances present in both Ouimet Corp. and Mentor Graphics—cases in which courts found that "benefits and burdens" originally inuring only to one corporation also ran to corporations in privity with each.

      In Ouimet Corp., for example, the court considered whether the Ouimet Corporation could be liable for shortfalls in a pension plan managed by a wholly owned subsidiary, Avon.

711 F.2d at 1089–90. Specifically, the issue was whether Ouimet could be liable for shortfalls that accrued <u>prior</u> to its purchase of Avon's stock. <u>Id.</u> Noting that the Ouimet now owned all of Avon's stock and that Emil R. Ouimet, or in some instances his son, served as the president of both the Ouimet Corporation and each of its subsidiaries entities, the court concluded that it could, stating, "Presumably the price at which Ouimet acquired Avon reflected the plan's funding inadequacies up to that date—such as for past service costs—and thus Ouimet <u>stepped into the shoes of Avon with respect to the benefits and burdens of the plan; certainly in most business acquisitions involving the purchase of stock this would be the case</u>." <u>Id.</u> at 1087, 1090 (emphasis added).[10]

Similarly, in <u>Mentor Graphics</u> the Federal Circuit considered whether estoppel ran from a parent corporation to its wholly owned subsidiary. 150 F.3d at 1375–76. It concluded that it could, noting that the parent corporation owned all of the subsidiary's stock, which allowed it to "exercise effective control over the [subsidiary]'s operations," and that the subsidiary had "sold itself to [the parent corporation] precisely so that it could undertake the actions that are the cause of the present dispute." <u>Id.</u> at 1379. Accordingly, privity existed between the two corporations, and the parent corporation's estoppel burden flowed to the subsidiary.

The Court sees no reason to deviate from either of these examples. When Defendants misled Innotek into concluding that they were no longer pursuing their asserted claim, they certainly ran the risk that Innotek would expand its own reliance on its UltraSmart collar design. It is also perfectly foreseeable that Innotek would sell or transfer that design to a third party—as it did here—and that both Innotek and the acquiring company would rely on the absence of any ongoing dispute during the course of their dealings. Under these circumstances, the Court cannot conclude that it would be inequitable to preclude Defendants from pursuing claims against Radio Systems on the basis of its use of the UltraSmart design. Like Innotek, Radio

---

[10] The court also found that "in enacting ERISA's termination liability provisions Congress treated entities under common control as one employer." <u>Ouimet Corp.</u>, 711 F.2d at 1089–90.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 19

Systems is entitled to summary judgment.

In sum, Plaintiffs have carried their burden of establishing each of the three elements of an estoppel defense beyond any possibility for fairminded dispute.  See Aukerman, 960 F.2d at 1046.  The Court therefore expresses no opinion on Plaintiffs' laches defense.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS Plaintiffs' motion.  No reasonable juror could disagree with Plaintiffs' position on infringement and equitable estoppel.  The Clerk of Court is directed to enter judgment in favor of Plaintiffs.

DATED this 26th day of January, 2012.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge